## MAY, 1928

W. J. RUTLEDGE, JR. ET AL. (JOHN R. LEMOND ET AL.) v. STATE OF TEXAS FOR THE USE AND BENEFIT OF ELLIS COUNTY LEVEE IMPROVEMENT DISTRICT NO. 3.

No. 4733. Decided March 9, 1927; May 23, 1928.
(292 S. W., 164. 7 S. W., 2d Series, 1071).

344

*Dwight L. Simmons* and *Thompson, Knight, Baker & Harris,* for plaintiff in error. Sec. 36, of Chap. 146, Acts of 1915, Regular Session, is not an adoption by reference of all the provisions of the general laws with reference to State and county taxes, but merely adopts certain specific portions of the general laws, relating to the date of maturity, time of delinquency, and penalties to be provided on taxes due such levee improvement districts, and to the powers of the assessors and collectors for such districts; and does not take away the right of the property owner to any of his substantive defensive rights, nor deprive him of his right to plead the two years' statute of limitation in bar of a right of action on such taxes. T. & P. Ry. Co. v. Ward County Irrigation District (El Paso Ct. Civ. App.), 257 S. W., 333, affirmed (Com. of App.), 270 S. W., 542; H. & T. C. Ry. Co. v. Travis County, 62 Texas, 18; Mellinger v. City of Houston, 68 Texas, 37, 3 S. W., 249; Town of Pleasanton v. Vance (Com. of App., Nov., 1925), 277 S. W., 89; Fischer v. Simon, 95 Texas, 234; Logan v. Stephens County, 98 Texas, 283, 83 S. W., 365; Bledsoe v. Haney, 122 S. W., 455; Commissioners v. Knight, 117 N. E., 565; 26 Cyc., 516, defining "Manner;" Words and Phrases (First Series), beginning at p. 4333.

The court erred in rendering judgment for any amount in favor of defendant in error against plaintiff in error on the taxes sued on, because the "Canales Act" and the Acts of the Legislature authorizing the formation of Ellis County Levee Improvement District No. 3, defendant in error herein, by virtue of which it derives its authority, are invalid and in violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States, in that there is no legislative determination of the amount of the tax to be assessed by said district, and no legislative distribution of the tax burden among the tax payers of said district. Browning v. Hooper, 269 U. S., 396 (Archer County case); Scaling v. Williams, 184 S. W., 310; Spencer v. Merchant, 125 U. S., 345, 31 L. Ed., 763; Fallbrook Irrigation District v. Bradley, 164 U. S., 112, 41 L. Ed., 364; Embree v. Kansas City & L. B. Road District, 266 U. S., 379, 69 L. Ed., 142; Sec. 59, Art. 16, of the Texas Constitution; Dallas County Levee District No. 2 v. Looney, 297 S. W., 310; Chap. 146, Acts of 1915; Art. 14, Sec. 1, Constitution of the United States.

The taxes for which this suit was brought are invalid and unconstitutional for the further reason that no hearing upon the apportionment of the burden is provided for in the Levee Improvement

District Act under which Ellis County Levee Improvement District No. 3 assessed these taxes. The taxes are in the nature of a special assessment (Embree v. Kansas City Road District, U. S., 60 L. Ed., 629), and must be levied either on the benefit plan or on the ad valorem basis. Browning v. Hooper, 269 U. S., 396 (Archer County case); Scaling v. Williams, 184 S. W., 310; Spencer v. Merchant, 125 U. S., 345; Fallbrook Irrigation District v. Bradley, 164 U. S., 112; Embree v. Kansas City Road District, 266 U. S., 379; Sec. 59, Art. 16, of the Texas Constitution; Chap. 146, Acts of 1915, Texas Legislature; Art. 14, Sec. 1, Constitution of the United States.

*W. P. Dumas* and *Goree, Odell & Allen,* for defendants in error.

This Honorable Court erred in adopting the opinion of the Commission of Appeals, Section A, and in holding that the general statute of two-year limitation operates against the defendant in error, so as to bar a recovery for the levee district taxes delinquent for the years 1919 and 1920. Acts of 1915, Chap. 146, Sec. 36; Acts of 1918, Fourth Called Session, Chap. 25, Secs. 9 and 10; Acts of 1918, Fourth Called Session, Chap. 44, Sec. 42 (amended by Acts of 1921, First Called Session, Chap. 50, Sec. 4); Dallas County Levee Improvement District No. 6 v. Curtis, 287 S. W., 301; Quinlan v. H. & T. C. Ry. Co., 89 Texas, 371, 34 S. W., 738; Leake v. City of Dallas, 197 S. W., 473; Dallas County Levee District v. Looney, 109 Texas, 326, 207 S. W., 310; Rev. Stats., 1925, Art. 2758.

The Levee District Act of 1915 expressly provides for a hearing before the Commissioners Court by any person who would be affected by the creation of said district, and with jurisdiction in the court to hear and determine "all contests and objections to the creation of such districts and all matters pertaining to the same"; and among the things which the court is expressly empowered to do as a result of such hearing is to determine the boundaries of the district, and thereby determine what properties shall be included therein.

Under the provisions of the Road District Act, which was construed by the Supreme Court in Browning v. Hooper, no provision whatever was made for a hearing of any character with reference to the creation of the proposed district. The road district was not created by Act of the Legislature or of the Commissioners Court. When a petition was presented to the Commissioners Court signed by the requisite number of property owners, the court, without a hearing of any character, was required to order an election as to

whether road bonds should be issued within the territory prescribed as a district by the property owners in their petition.

Mr. Judge BISHOP delivered the opinion of the Commission of Appeals, Section A.

The statement of this case and the question here presented are as shown by the Court of Civil Appeals in its opinion, as follows:

"This suit was brought in the name of the State *pro forma* for the use and benefit of Ellis County Levee Improvement District No. 3, against appellees, to enforce collection of delinquent taxes for the years 1919-1921, inclusive, regularly levied on and assessed against 292.2 acres of land situated within the district.

"The defense urged was that the claim for taxes due for the years 1919 and 1920 was barred by the two-year statute of limitation. On trial before the court without a jury, the plea of limitation was sustained and appellant was denied a recovery for the taxes delinquent for the years 1919 and 1920.

"Only one question is presented for our consideration, that is: Did the general statute of two-year limitation operate against appellant so as to bar a recovery for the taxes for the two years mentioned?

"Ellis County Improvement District No. 3 was organized under and is controlled by the provisions of Chap. 146, General Laws of the Thirty-fourth Legislature, page 229, *et seq.*, approved April 1, 1915, and known as the Canales Act.

"In regard to the assessment and collection of taxes, the Act provides:

"Section 34. 'It shall be the duty of the tax collector to make a certified list of all delinquent property upon which the improvement taxes have not been paid, and return the same to the County Commissioners Court, and said court shall proceed to have said taxes collected by sale by the collector or by suit, in the same manner as now provided for the collection of delinquent State and county taxes. * * *'"

"Section 36. 'All taxes levied or authorized to be levied by this Act shall be payable and shall mature and become delinquent as is provided by the laws of this State for State and county taxes, and, upon the failure to pay such taxes when due, the same penalties shall accrue and be collected as are provided by the laws of the State of Texas for the non-payment of State and county taxes. All taxes shall be a lien upon the property against which such taxes are as-

sessed. In the assessment and collection of the taxes levied or authorized to be levied by this Act, the assessor and collector of taxes shall, respectively, have the same powers and shall be governed by the same rules and regulations as are provided by the laws of the State of Texas, for the assessment and collection of State and county taxes, unless herein otherwise provided.' "

Art. 7662, Rev. Civ. Stats., 1911 (Art. 7298, Rev. Civ. Stats., 1925), is:

"No delinquent tax payer shall have the right to plead in any court or in any manner rely upon any statute of limitation by way of defense against the payment of any taxes due from him or her, either to the State or any county, city or town."

In the case of T. & P. Ry. Co. v. Ward County Irrigation District No. 1, 270 S. W., 542, in which the judgment of the Court of Civil Appeals was affirmed, we held that this article did not include such improvement districts as the one here seeking to recover delinquent taxes due it, and that the general statute of two years' limitation operates to bar recovery, unless by legislative enactment such districts were excepted from the provision of the general statutes of limitation. The Court of Civil Appeals in this case holds that the provisions of this Act, under which the Ellis County Levee Improvement District No. 3 was organized, and which are quoted in the above statement, have the effect to exempt such districts from the bar of limitation.

These sections prescribe the duties of the assessor and collector of taxes and the County Commissioners Court, in regard to the levy and collection of taxes, and provide the manner in which these duties shall be performed. In providing the manner, they adopt the provisions of the laws of the State relating to State and county taxes. They also adopt the provisions of the laws of the State relating to State and county taxes as to the time when taxes shall mature and become delinquent, and as to the penalties which shall accrue and be collected. They make no reference to the provision of Art. 7662, and do not purport to adopt it. All references made are to provisions in regard to specific matters, and no reference to the right of a tax payer to insist upon the bar of limitation is made. The courts would not be warranted in assuming that the Legislature intended to adopt by reference the provision of a statute to which provision no reference is made.

The assignment asserting that the Act authorizing the creation of the district is prohibited by the Fourteenth Amendment of the Fed-

eral Constitution should be overruled. The provisions of this Act should be construed to authorize and require that the County Commissioners Court in creating the district protect all rights of those owning property within its proposed boundaries.

The holding of the Court of Civil Appeals that the trial court erred in sustaining the plea of limitation and refusing to render judgment for the taxes delinquent for the years 1919 and 1920, though supported by the holding of the Court of Civil Appeals of the First District in the case of Holt v. State, 176 S. W., 743, is in direct conflict with the holdings made by the Court of Civil Appeals of the Eighth District (257 S. W., 333), and this Commission in the case of T. & P. Ry. Co. v. Ward County Irrigation District No. 1, supra, and we recommend that its judgment reversing the judgment of the District Court be reversed, and that of the District Court be affirmed.

Judgment of the Court of Civil Appeals is reversed, and that of the District Court, affirmed, as recommended by the Commission of Appeals.

· C. M. Cureton, Chief Justice.

### ON MOTION FOR REHEARING.

Mr. Chief Justice CURETON delivered the opinion of the Supreme Court.

On motion for rehearing the plaintiff in error earnestly insists that the Levee District Act of 1915, under which the defendant in error Ellis County Levee Improvement District No. 3 was organized, is void under the Fourteenth Amendment of the Constitution of the United States, in view of the opinion of the Supreme Court in the case of Browning v. Hooper, 269 U. S., 396 (Archer County case).

We have carefully examined the Act of 1915, and there is no merit in this contention. The Act of 1915 is Chap. 146, General Laws of the Regular Session of the Thirty-fourth Legislature, and provides a method for the establishment of Levee Improvement Districts through the Commissioners Court of the several counties of the State. Sec. 1 of the Act confers jurisdiction and power upon the Commissioners Courts, when invoked in the manner therein provided, to "create, establish, and define one or more levee improvement districts in their respective counties, in the manner hereinafter provided, and may or may not include within the boundaries and

limits of such districts villages, towns, and municipal corporations, or any portion thereof; but no land at the same time shall be included within the boundaries of more than one levee improvement district created under the provisions of this Act." Such districts "when so created, established, and defined," may build, construct, and maintain levees or other improvements on all rivers, creeks, and streams within the district, to prevent overflows. They may also, in accordance with the Act, issue bonds in payment therefor and the maintenance thereof, and may levy and collect taxes for the payment of bonds and interest. Such districts are also empowered to levy and collect taxes for the maintenance and upkeep of the levees and other improvements, as provided therein. They are likewise given power of eminent domain, etc. The manner of creating districts of this character is elaborately set forth in several sections of the Act.

Section 2 provides that upon presentation to the Commissioners Court of any county of a petition signed and acknowledged "by the owners of a majority of the acreage in a proposed levee improvement district," praying for the establishment of such a district, and setting forth "the necessity, feasibility, and proposed boundaries thereof," etc., that the Commissioners Court "shall, if in session when said petition is presented, at said session of the court set said petition down for a hearing at some regular or special session of the court, not less than fifteen nor more than thirty days from the date of the presentation of said petition, and shall order the clerk of said court to give notice of the filing of said petition, and of the date and place of hearing, by posting written or printed notices thereof in five public places in said county, one of which shall be at the courthouse door of the said county, and four of which shall be within the limits of the proposed levee improvement district. Such notices shall be posted for ten days prior to the time set for such hearing."

Section 4 provides that when the petition is set down for hearing the clerk of the court shall give written notice to the State Reclamation Engineer, setting forth the time, place, and purpose of the hearing. It is then made the duty of the State Reclamation Engineer, whose office and duties are defined in other articles of the statute, to examine the proposed district, and prior to the hearing file with the clerk of the Commissioners Court a report showing the general character, approximate location, and estimated cost of the improvements required. This section likewise declares that the State Reclamation Engineer, or his deputy, shall be present at the hearing previously

provided for, and furnish such supplementary information as may be required by the court.

The State Reclamation Engineer is a technical officer, required by the statute to be a thoroughly experienced and skilled topographer, hydrographer, draftsman, and reclamation engineer, with not less than five years' actual experience in geodetic and topographic surveying, and experienced in making and passing upon reclamation plans and estimates. Vernon's Complete Texas Statutes, 1920, Art. 5529b.

Art. 5529a sets forth the purpose of the General Reclamation Act. This article declares that its primary object is to devise and plan and mark out upon the ground "all the improvements necessary to reclaim or cause to become suitable for agricultural uses, the overflowed, and swamp lands and overflowed areas in the coastal plain, and other lands within this State, which, by reason of the temporary or permanent excessive accumulation of water thereon, or contiguous thereto, are not suitable for such uses; and, to accomplish the said primary purpose, it is hereby authorized and ordered that the necessary investigations, examinations, measurements, computations, estimates, surveys, maps, reports and publications shall be made, and any other necessary work incident thereto shall be done, which may be required in the process of designing, planning or marking out upon the ground the most effective, practical, permanent, economical, feasible and equitable improvements or systems of improvements such as levees, dikes, dams, canals, drains, water-ways, reservoirs or any or all of them, and other improvements incidental thereto, and that in so far as possible the said improvements shall be designed, planned or marked out upon the ground with primary consideration to the topographic and hydrographic conditions, and in such manner that each division of the said improvements shall be a complete, united project, forming a coordinate part of an ultimately finished series of projects."

Without reviewing at any great length the duties of the Reclamation Engineer, we merely direct attention to the above declaration as to the purpose of the Legislature in creating his office, and refer generally to the statutes as to the methods to be employed in accomplishing the result contemplated by the law.

Reading, therefore, the articles of the statute relating to the State Reclamation Engineer and his duties, shown in Arts. 5529a to 5529j, in connection with Section 4 of the Act of 1915, by which that officer is required to investigate and report upon any proposed

Reclamation District, it is apparent that the purpose of the State in authorizing the creation of Levee Improvement Districts, and the administrative office of Reclamation Engineer, is to embrace within the boundaries of Levee Improvement Districts lands which need to be protected from overflows, or to be reclaimed from overflow and swamp conditions, in a manner capable of being correlated into a unified system as to any particular area or along any particular stream or streams. In other words, considering the two Acts together, it is apparent that the purpose of the Legislature is to authorize the creation of public corporations according to some unified system, for the purpose of reclaiming and having the effect to reclaim lands fit for agricultural purposes from overflows or conditions due to excessive uncontrolled precipitation.

This general purpose found in the statutes is one clearly contemplated by, and comprehended within, Sec. 52 of Art. 3 of the Constitution, under which the Act of 1915 was passed by the Legislature. That section of the Constitution authorized the improvement of rivers, creeks, and streams "to prevent overflows," or in aid of that purpose. It likewise authorized the construction of pools, lakes, reservoirs, dams, canals, and water-ways, for the purposes of irrigation, navigation, or *drainage,* or in aid thereof. There runs, therefore, through the statutes and the constitutional provision, the general purpose to provide some method of reclaiming lands from overflows or overflow conditions. Since the creation of districts to accomplish this purpose is thus authorized by the State Constitution, it follows that the districts to be created must be brought into existence consistent with the law of due process as declared in both the State and Federal Constitutions. Since the districts authorized are local improvement districts, it follows that they must be created either by direct act of the Legislature, by which that body selects the territory and spreads the burden of taxation, or by some legislative agency, such as the Commissioners Court; and if by the latter method, then only after notice, hearing, and determination of benefits, and therefore of boundaries. Browning v. Hooper, 269 U. S., 396.

In plain terms, we think that Sec. 52, Art. 3, of the State Constitution, construed with reference to the due process clauses of the State and Federal Constitutions, within itself would prevent the creation of local Improvement Districts with powers of taxation, where the lands to be taxed would not be capable of being improved or benefited by the exertion of the constitutional and statutory power

in the prevention of overflows. Since this section of the Constitution, as we construe it, requires notice and hearing and determination of benefits, and therefore boundaries, where the proposed district is to be created by a local agency, such as the Commissioners Court, it follows that in interpreting the statutes we should keep this constitutional purpose in view, and resolve all doubtful language consistently with the constitutional requirements. Having in mind the purpose of the Constitution, and the general rule of construction stated, we have no doubt that the Act here involved is valid, and that under it only lands which may be benefited in some way may be included in a Levee Improvement District.

Secs. 5 and 6 of the Act of 1915 read as follows:

"Sec. 5. At the time set down for the hearing of said petition any person who would be affected by the creation of said district may appear before the said court and contest or contend for the creation of said district, and may offer testimony to show that the said district is or is not necessary and would or would not be a public utility, and that the creation of said district would or would not be feasible or practicable. Said Commissioners Court shall have exclusive or final jurisdiction to hear and determine all contests and objections to the creation of such districts and all matters pertaining to the same, and said court shall have exclusive jurisdiction over all subsequent proceedings of said district when organized, except as herein provided, and may adjourn hearings on any matter connected therewith from day to day; and all judgments, orders or decrees rendered by said court in relation thereto shall be final, except as hereinafter provided.

"Sec. 6. If upon the hearing of said petition it shall appear to the court that the proposed improvements are feasible and practicable, and are needed, and would be conducive to public health, or would be a public benefit or a public utility, then the court shall so find and shall render judgment reciting such findings and create and establish such district, and by its order entered of record duly define its boundaries and declare and decree the said district a body corporate, with full authority to effect the reclamation, protection and improvement of the lands and other property authorized by this Act. But if the court should not so find, then the court shall dismiss the petition at the cost of the petitioners and enter such finding of record."

We have already seen that the Act of 1915 provides for a petition of the land owners to the Commissioners Court, and notice and

hearing thereon. It will be observed from Sec. 5, quoted above, that at the time set for the hearing of the petition any person who might be affected by the creation of a district may appear before the court "and contest or contend for the creation" of the district; that any person who may thus appear may offer testimony to show that the proposed district (1) is or is not necessary; (2) would or would not be a public utility; (3)· and that the creation of the district would or would not be feasible or practicable.

Sec. 6, as quoted above, declares that if upon hearing of the petition it shall appear to the Commissioners Court that the proposed improvements are (a) feasible and practicable; (b) and are needed; (c) and would be conducive to public health; (d) or would be a public benefit or utility, then the court is to make a finding to that effect, "and by its order entered of record duly *define* its boundaries," etc. Authority to define the boundaries of the district necessarily carries with it the power to determine and fix these boundaries. If the boundaries had already been previously defined in an effective legal sense in the petition, it would not be necessary for the Commissioners Court to define them, nor consider that question.

In Sec. 5 the Commissioners Court is expressly given jurisdiction to "hear and determine all contests and objections to the creation of such district, and all matters pertaining to the same." This language is broad enough, and was no doubt intended to empower Commissioners Courts to determine what lands should be embraced within the boundaries which they are authorized by the section to define.

It would be an unreasonable construction of the law to say that after a contest and hearing touching the entire subject matter of the creation of a district, and after an investigation by the Reclamation Engineer to determine whether or not its creation is feasible and practicable, that the Commissioners Court should not have authority to exclude from the boundaries named by the petitioners any portion of the land which the Reclamation Engineer might say, and which upon investigation the Commissioners Court might conclude, did not need protection from any overflow, or would not be benefited by the improvements found to be feasible and practicable. This is so for the reason that it is entirely within the range of probability that certain portions of any proposed district might be found to be so unrelated to feasible and practicable improvements that it ought not be included within the district, or might be found to be of such altitude that protection from overflows would be entirely unnecessary, or would not benefit it, while the proposed district in the main would

show lands that ought to be protected. To say that the organization of a public corporation to reclaim lands which need reclamation, after a more or less expensive investigation by the Reclamation Engineer, and hearing before the Commissioners Court, should be defeated merely because those who prepared the petition for the creation of the district included some land in the proposed boundaries which would not be benefited, or would not be capable of being protected by the levee system to be constructed by the district, would be an unreasonable construction of a law having at all times a very practical object, to-wit: To reclaim land from overflows, and the destructive effects of too much water. We prefer to give the Act a reasonable and practical construction, and to say that by its terms it intends to confer, and does confer, upon the Commissioners Court the power and duty to determine the feasibility and practicability of the proper organization of the district as related to each of the several tracts of land included therein; that the power to determine whether or not the proposed improvements are needed relates to each of the several tracts of land included in the district; that the power to determine whether or not the creation of the district would be a public utility carries with it the power to determine whether or not the lands to be included would be benefited; and that the power to define boundaries of the district carries authority with it to determine whether or not the lands within these boundaries will be protected from overflows or be benefited by the protection afforded by the creation of the district—and with power, therefore, to exclude from the district such lands as would not be thus protected or thus benefited.

That the construction of the language here involved is correct we think is shown by the opinion of the Supreme Court of the United States in the case of Embree v. Kansas City and Liberty Blvd. Road District, 240 U. S., 242, 60 Law Ed., 624. In that case, on appeal to the Supreme Court of the United States from the Supreme Court of the State of Missouri, the district was not established or defined by the Legislature, but by order of the County Court, made under a general law. Whether or not there was need for the district—and, if so, what lands should be included and what lands excluded, was committed to the discretion of the County Court, subject to certain qualifications, among which were: (1) That the court's action must be invoked by a petition signed by the owners of a majority of the acreage in the district; (2) that public notice must be given by the

clerk of the court of a hearing; and (3) that the owners of land within the proposed district should be accorded an opportunity to appear and oppose the formation of the district. In this connection the statute provided:

"The court shall hear such petition and remonstrance, and shall make such change in the boundaries of such proposed district as the public good may require and make necessary, and if after such changes are made it shall appear to the court that such petition is signed or in writing consented to by the owners of a majority of all the acres of land within the district as so changed, the court shall make a preliminary order establishing such public road district, and such order shall set out the boundaries of such district as established * * * but the boundaries of no district shall be so changed as to embrace any land not included in the notice made by the clerk unless the owner thereof shall in writing consent thereto, or shall appear at the hearing, and is notified in open court of such fact and given an opportunity to file or join in a remonstrance."

The opinion of the Supreme Court was written by Mr. Justice Van Devanter, in which he concluded that the statute did provide for according land owners an opportunity to be heard, when the district was created, upon the question whether or not their lands would be benefited; and he therefore held that the Act was valid under the due process clause of the Federal Constitution. He stated, of course, that since the Legislature had not established the district, and there was no legislative decision as to the benefits to accrue to lands embraced therein, it was essential to due process that the land owners be accorded an opportunity to be heard on the question as to whether their land should be included. As stated above, he concluded that such a hearing was provided for. In discussing this question he, in part, said:

"Did the statute contemplate such a hearing? We have seen that it required that adequate public notice be given of the presentation of the petition for the creation of the district and the time when it would be considered, made provision for the presentation of remonstrances by owners of lands within the proposed district, and directed that the petition and remonstrances be heard by the County Court, that the court make such change in the boundaries 'as the public good may require,' and that the boundaries be not enlarged unless the owners of the lands not before included consent in writing or appear at the hearing and be given an opportunity to present objections.

That a hearing of some kind was contemplated is obvious, and is conceded. But it is insisted that it was not to be directed to the question whether the lands included would be benefited by the creation of the district and what it was intended to accomplish. If that were so, there would be little purpose in the hearing and no real necessity for it.

"True, *the statute does not in terms say that lands which will not be benefited shall be excluded; or that only such as will be benefited shall be included,* but it does say that the court shall make such change in the proposed boundaries 'as the public good may require.' In the presence of this comprehensive direction there can be no doubt that the Legislature intended to authorize and require the County Court to adjust the boundaries so they would include only such lands as might be reasonably expected to be benefited by the improvement of the district roads, and therefore might be properly charged with the cost of that work. That there is an inseparable union between the public good and due regard for private rights should not be forgotten." (Italics ours.)

It appears to us that this decision concludes the question.

We have discussed language somewhat similar to that employed in this statute in the case of Trimmier v. Carlton, 116 Texas, 572, and refer to that case generally for a discussion of the subject of due process under statutes of this character.

On the whole, we therefore conclude that the statutes here involved do afford to the land owner an opportunity to be heard on the question of benefits and on the question of whether or not his land shall be included within a Levee Improvement District, and accord with due process in the respects here discussed under the Federal Constitution.

The other question stressed in the motion for new trial, to the effect that there is no legislative determination of the amount of the tax to be assessed in a Levee Improvement District, has, we think, been ruled adversely to the plaintiff in error by the opinion of Chief Justice Phillips in the case of Dallas County Levee District No. 2 v. Looney, 109 Texas, 326, and we deem it unnecessary to discuss it.

The defendant in error in its motion for rehearing earnestly and ably insists that the statute of limitation discussed in the opinion of the Commission of Appeals does not apply to taxes due Leveee Improvement Districts as the Commission of Appeals has held. We have carefully examined the motion and argument on this question,

and have reached the conclusion that the Commission of Appeals has correctly decided the question, and that further discussion by this court is unnecessary.

Both motions for rehearing are accordingly overruled.

*Reversed and judgment of District Court affirmed.*