## FANNIN–LAMAR–DELTA IMPROVEMENT DIST. NO. 3 v. STATE et al.

## No. 4481.

Court of Civil Appeals of Texas. Texarkana.

June 21, 1934.

Rehearing Denied June 28, 1934.

W. P. Dumas, of Dallas, and McKinney & Berry, of Cooper, for appellant.

Cunningham & Lipscomb, of, Bonham, and Edgar Wright, of Paris, for appellees.

SELLERS, Justice.

This appeal is prosecuted from a judgment of the district court of Fannin county decreeing a dissolution of the Fannin-Lamar-Delta Levee Improvement District No. 3, canceling certain bonds voted and issued by the district, and perpetually enjoining the defendants from using the lands embraced within the boundaries of the district.

The suit was in the nature of a quo warranto brought against the levee district and its bondholders by the state acting by the county attorney of Fannin county, pursuant to permission granted by the judge of the district court of Fannin county, upon the relation of three named individuals who were alleged to have land or an interest in land or liens thereon within the boundaries of the levee district.

The petition alleged fraud in the creation of the levee district, in that the names of certain persons and corporations were attached to the petition for the creation of the district fraudulently and without their consent, as also were the names of persons who did not own land within the district, and estates under administration, which being eliminated, the petition was not signed by the owners of a majority of the acreage in the proposed district as required by article 7974 of the Revised Statutes. It was also alleged that the levee district was not legally incorporated and that it had no status as a body corporate in the state; that it was conceived in fraud and its pretended incorporation was effected by fraud; that the boundaries of the district were fraudulently run in such a way as to include many acres of land not subject to overflow and not for any reason subject to be included, and were also fraudulently run as to exclude from its boundaries many persons having the qualifications of voters and to include voters known to be favorable to the organization of the district; also, that the benefits assessed were greatly in excess of the value of the land itself and in the course of a few years would result in confiscation of all property in the district.

The levee district and Trinity Farm Securities Company, as a bondholder, filed an answer, the nature of which will hereafter sufficiently appear in the course of the opinion. The case was tried to the court without a jury, and judgment rendered as stated. No findings of facts or conclusions of law were requested or filed.

Appellant contends that the suit could not be instituted or maintained by the county attorney, but only by the Attorney General or under his direction. Under article 4, § 22, of the Constitution, the Attorney General alone can institute a proceeding to forfeit the charter of a private corporation. State v. Waller (Tex. Civ. App.) 211 S. W. 322, 323; State v. Railway Co., 89 Tex. 562, 35 S. W. 1067; Brady v. Brooks, 99 Tex. 379, 89 S. W. 1052; Oriental Oil Co. v. State (Tex. Civ. App.) 135 S. W. 722. However, the levee district in question is a governmental agency and a body politic and corporate (Wilmarth v. Reagan [Tex. Com. App.] 242 S. W. 726, 727), and a different rule applies. The district or county attorney, after obtaining leave from the district court of the county, as was done here, may file an information in the nature of a quo warranto against such corporations. This seems to be well established. State v. Waller (Tex. Civ. App.) 211 S. W. 322, 323; Brennan v. City of Weatherford, 53 Tex. 330, 37 Am. Rep. 758; Crabb v. Celeste Ind. School District, 105 Tex. 194, 146 S. W. 528, 39 L. R. A. (N. S.) 601, Ann. Cas. 1915B, 1146; Minear v. McVea (Tex. Civ. App.) 185 S. W. 1048; State v. Bradshaw (Tex. Civ. App.) 228 S. W. 655. The court may not deny leave to the county or district attorney to file an information or petition in the nature of a quo warranto except in the exercise of sound judicial discretion. State v. Huntsaker (Tex. Civ. App.) 17 S.W. (2d) 63; State v. Hoff, 88 Tex. 297, 31 S. W. 290.

It is next contended that quo warranto proceedings do not lie in this case to test the validity of a public or quasi public corporation and to cancel its bonds where it appears that the bonds were approved by the Attorney General and registered by the comptroller in the method and manner required by statute (Vernon's Ann. Civ. St. arts. 8009, 8010) and the same have been put into circulation through the channels of commerce on the faith and credit of such political subdivision.

The Attorney General issued a certificate approving the bonds of the levee district in the sum of $155,000, reciting that they were

valid and binding obligations and that the district was legally established. The bonds were likewise registered by the comptroller. Prior to the approval of the bonds, the state reclamation engineer certified to the Attorney General that the record of organization of the levee district had been filed in his office as required by law and that the plan of reclamation for the district had been approved by him.

, The effect of this contention is to ascribe judicial power to these officers and to make their acts final and conclusive, and not subject to review by the courts. We think the certificate of the Attorney General and the acts of the other state officers done in connection with the issuance of such bonds afford at most only prima facie evidence of validity and regularity. It is not a judicial act. Rogers v. Lynn, 121 Tex. 467, 49 S.W. (2d) 709, 51 S.W.(2d) 1113.

Certainly where fraud is alleged, as here, in the creation of the district and the issuance of the bonds, it can hardly be asserted that the courts are powerless to inquire into the proceedings looking to the creation of the district and issuance of bonds and render such judgment as the evidence justifies or requires notwithstanding their approval by the Attorney General. Wilmarth v. Reagan (Tex. Com. App.) 242 S. W. 726, 730; Stockwell v. State, 110 Tex. 550, 221 S. W. 932, 12 A. L. R. 1116.

▮ Again, it is urged that the judgment of the commissioners' court creating and establishing the levee improvement district and defining its boundaries was the final act of the court under the statute (Vernon's Ann. Civ. St. art. 7972 et seq.), and its judicial findings import absolute verity, and is not subject to collateral attack. The order of the commissioners' court recites that the petition for the creation of the district "complies with the law in all respects" and "that the parties whose names are signed to the said petition are the owners of a majority of the acreage of the proposed district."

This question has been decided against appellant's contention. In Trimmier v. Carlton (Tex. Civ. App.) 264 S. W. 253, 257, it is said: "When the questions touching the validity of the formation of a public corporation merely extend to the regularity of the procedure which has been followed or the correctness of the rulings of some board or other body vested with the authority to determine preliminary matters, it is generally held that the state alone has the right to raise such question. Crabb v. School Dis-

trict, 105 Tex. 194, 146 S. W. 528 [39 L. R. A. (N. S.) 601], Ann. Cas. 1915B, 1146; Drainage District v. Higbee (Tex. Civ. App.) 149 S. W. 381." This case also decides that the question whether the requisite number of property owners signed the petition to create the district could be questioned in a quo warranto proceeding by the state. In Wilmarth v. Reagan (Tex. Com. App.) 242 S. W. 726, 730, it was held that the existence and right to act as "a governmental agency, and a body politic and corporate" could be questioned in quo warranto proceedings citing Parker v. Drainage Dist. (Tex. Civ. App.) 148 S. W. 351; Cochran v. Kennon (Tex. Civ. App.) 161 S. W. 67; Holt v. State (Tex. Civ. App.) 176 S. W. 743; Minear v. McVea (Tex. Civ. App.) 185 S. W. 1048; Crabb v. School District, 146 S. W. 528, 39 L. R. A. (N. S.) 601; and Harbin Ind. School Dist. v. Denman (Tex. Com. App.) 222 S. W. 538.

▮ The quo warranto proceedings in this case were not instituted until almost five years after the organization of the district, and the contention is made that the attack upon the validity of such organization comes too late and the state is guilty of laches. This contention must be overruled upon the authority of State v. Wofford, 90 Tex. 514, 39 S. W. 921, which holds that the defense of laches cannot be invoked since time does not run against the sovereign and the suit is in the nature of a suit by the state.

▮ The argument is pressed upon us with force and vigor that the relators and others similarly situated have, by their conduct in standing by without action for nearly five years with knowledge that proceedings were being taken in the statutory manner to create the district, that an election had been ordered to issue bonds, that the election had been held and the bonds authorized, that construction work had been performed in the district as contemplated, if entirely completed, and had failed to make any protest or register any objection to the proceedings, waived any right which they may otherwise have had under the Constitution and statute to object. We think this contention in the light of the facts in the record must be sustained. Without detailing the testimony of relators' witnesses, it appears that they knew about the time of the public hearing at Bonham of the commissioners' court upon the petition for the creation of the district, entered no protest against any action taken thereat, and knew that the district had been created; that they also knew that an election had been ordered for the authorization

of the issuance of bonds, that bonds had been voted, and registered no protest with the Attorney General, also that the improvements had been made as contemplated. Relators knew the facts of the situation currently as they developed and no excuse is given for the delay in instituting this proceeding.

In Shepard v. Barron, 194 U. S. 553, 24 S. Ct. 737, 741, 48 L. Ed. 1115, the court said:

"A defense of this nature and upon these facts need not be placed entirely upon the strict and technical principles of an estoppel. While it partakes very strongly of that character, it also assumes the nature of a contract, implied from the facts, by which the party obtaining the benefit of the work agrees to pay for it in the manner provided in the statute under which it is done, even though the statute turn out to be unconstitutional. * * *

"Under some circumstances a party who is illegally assessed may be held to have waived all right to a remedy by a course of conduct which renders it unjust and inequitable to others that he should be allowed to complain of the illegality. Such a case would exist if one should ask for and encourage the levy of the tax of which he subsequently complains; and some of the cases go so far in that direction as to hold that a mere failure to give notice of objections to one who, with the knowledge of the person taxed, as contractor or otherwise, is expending money in reliance upon payment from the taxes, may have the same effect."

In Gulf, etc., R. R. Co. v. Ducksworth, Sheriff et al. (C. C. A.) 286 F. 645, 648, the court said: "It (appellant) does not deny that it knew that the bonds were being issued, or that the taxes to pay the same would be a charge upon its property within said district for many years, and it would seem that it should not have stood by and permitted the bonds to be issued and sold to bona fide holders without promptly interposing any objection it had."

In Louisiana Railway & Navigation Co. v. State (Tex. Civ. App.) 298 S. W. 462, 467, the court said: "That a person may by his acts, or omissions to act, waive a right which he might otherwise have under the Constitution of the United States as well as under a statute is well settled by the decisions of the Supreme Court of the United States. The question as to whether or not in a particular case such right has been lost by a course of conduct is exclusively for the determination of the courts of the state."

The facts of this case call for the application of this principle which is so well recognized in the above cases as also in Rutledge v. State, 117 Tex. 342, 292 S. W. 164, 7 S.W. (2d) 1071; Morton v. Thomson (Tex. Civ. App.) 15 S.W.(2d) 1067; Wight v. Davidson, 181 U. S. 371, 21 S. Ct. 616, 45 L. Ed. 900; and Dunn v. Fort Bend County (D. C.) 17 F. (2d) 329. To hold otherwise would result in great injustice to the holders of the bonds issued by the levee district who, so far as the record in this case shows, purchased in good faith, for value and without notice of the alleged fraud in the creation of the district, and after the approval of the bonds and the proceedings creating the district by the Attorney General. As we have stated, while this was not a judicial act, its effect was to declare the district and bonds at least prima facie valid and to require action, and not inaction, upon the part of those feeling themselves aggrieved, or damaged, by the creation of the district and the proposed outlays. In the absence of some sufficient reason for delay in instituting a proceeding to contest their validity before expenditures are made within the knowledge of relators and rights of innocent purchasers intervene, the courts should be slow to strike down the proceedings. The bonds were not void, but voidable at most, even if there were irregularities in the creation of the district. The burden was upon relators to show that the holder of the bonds was not an innocent purchaser for value before they could be stricken down. This burden they did not discharge, although they alleged that the holder of the bonds purchased with actual knowledge of their invalidity. No proof whatever was offered upon the point, and we must assume the bona fides of the purchaser in view of the approval of the bonds by the Attorney General and that they were negotiable.

The judgment of the trial court is reversed and judgment here rendered for appellant.