

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

November 13, 1989

Honorable Bobby Joe Mann
Palo Pinto County Attorney
Courthouse
Palo Pinto, Texas   76072

Opinion No. JM-1115

Re: Whether the Water Commission has the authority to create a district whose boundaries exclude mineral estates located more than 300 feet below the surface of the land and whether such mineral estates must be taxed (RQ-1457)

Dear Mr. Mann:

You inform us that in 1980 the Texas Water Commission by written order granted a petition authorizing the creation of a municipal utility district within Palo Pinto County designated "Sportsman's World Municipal Utility District." The petition approved by the commission set forth the boundaries of the district, specifically excluding from the boundary description the mineral estates located below a depth of 300 feet under the surface area of the land comprising the district. Consequently, as a practical matter, all mineral interests within the surface boundaries of the district below a depth of 300 feet from the surface have been exempted from ad valorem taxation imposed by the district since the district's creation.

Because of the requirement of article VIII of the Texas Constitution that all property, except that specifically exempted by the constitution, be taxed in an equal and uniform manner, you ask the following question:

> [A]re the mineral interests located under the boundaries of the Sportsman's World Municipal Utility District taxable for ad valorem taxation purposes by the Sportsman's World Municipal Utility District?

You also ask:

> Does the Water Commission have the authority
> to create a district whose boundaries exclude
> a category of taxable property?

We will address initially your second question. We answer it in the negative; the Texas Water Commission is without authority to approve a petition authorizing the creation of a municipal utility district that excludes from its boundaries a particular class of taxable property, specifically the mineral estates located below a depth of 300 feet from the surface area of the land comprising the district.

There can be no question that, absent the Water Commission order purporting to exclude from the boundaries of the district the mineral estates below a depth of 300 feet under the surface of the land comprising the district, such mineral estates would be taxable by the district. See, e.g., Note, Ad Valorem Taxation of Mineral Property, 21 Baylor L. Rev. 46 (1969). The issue then is whether the Water Commission has the authority to approve the creation of a district that excludes such a category of taxable property from the boundaries of the district.

The Sportsman's World Municipal Utility District was created pursuant to section 59 of article XVI of the Texas Constitution and chapter 54 of the Water Code. Section 54.013 of the code governs the composition of the district and provides:

> (a) A district may include the area in all or part of any county or counties including all or part of any cities and other public agencies.

> (b) The land composing a district need not be in one body, but may consist of separate bodies of land separated by land which is not included in the district. (Emphasis added.)

Section 54.014 of the code provides that, in order to create a chapter 54 municipal utility district, a petition requesting creation must be filed with the Texas Water Commission [hereinafter the commission]. Section 54.015 of the code sets forth the contents of the petition and provides in pertinent part:

> The petition shall:

(1)    describe the boundaries of the pro-
posed district by metes and bounds or by lot
and block number, if there is a recorded   map
or  plat  and  survey  of  the   area . . . .
(Emphasis added.)

Section 54.020 of the code requires that, after  proper
notice, the  commission  shall  hold a  hearing  and  "shall
examine  the   petition  to   ascertain  its   sufficiency."
Subsection (b) of section  54.020 provides that "[t]he  com-
mission shall have jurisdiction  to determine all issues  on
the  sufficiency  of  the  petition  and  creation  of   the
district."

Section 54.021  of  the  code  governs the  granting  or
denial of the petition and provides in relevant part:

(a)   After the hearing of the petition  if
it is found that the petition conforms to the
requirements of Section  54.015 of this  code
and  that   the  project  is  feasible   and
practicable and is necessary  and would be  a
benefit to  the land  to be  included in  the
district, the commission shall so find by its
order and grant the petition.

(b)  In  determining  if  the  project  is
feasible  and  practicable   and  if  it   is
necessary and would be a benefit to the  land
included  in  the  district,  the  commission
shall consider:

. . . .

(3)  whether or not the district  and
its  system  and  subsequent   development
within  the   district   will   have   an
unreasonable effect on the following:

(A)   land elevation;

(B)   subsidence;

(C)   groundwater   level   within
the region;

(D)   recharge  capability  of  a
groundwater source;

> (E) natural run-off rates and drainage;
>
> (F) water quality; and
>
> (G) total tax assessments on all land located within the district.
>
> (c) If the commission finds that not all of the _land_ proposed to be included in the district will be benefited by the creation of the district, the commission shall so find and exclude all _land_ which is not benefited from the proposed district _and shall redefine the proposed district's boundaries accordingly_. (Emphasis added.)

Neither section 54.013 nor any other section of the code expressly authorizes the commission to approve a petition authorizing the creation of a district that excludes from its boundaries the mineral estate located below the surface of the land comprising the district. However, a brief submitted to us in connection with this request concludes that the code impliedly authorizes the creation of such a district. We summarize the argument as follows:

> Minerals in place are realty and, as such, are subject to ownership, severance, and sale. _Hager v. Stakes_, 294 S.W. 835 (Tex. 1927); _Texas Co. v. Daugherty_, 176 S.W. 717 (Tex. 1915). A grant or reservation of mineral interests by the fee owner effects a horizontal severance and creation of two separate and distinct estates: an estate in surface and an estate in mineral. _Acker v. Guinn_, 464 S.W.2d 348 (Tex. 1971); _Atlantic Ref. Co. v. Noel_, 443 S.W.2d 35 (Tex. 1968). Real estate ordinarily is taxed as a unit; yet, where there has been a severance by conveyance, exception, or reservation, so that one portion of the realty belongs to one person and other portions to others, each owner should pay taxes under proper assessment against him of the portion owned by him. The fact that a portion may consist of minerals or of a fractional interest therein makes no difference. _Hager v. Stakes, supra; State v. Downman_, 134 S.W. 787 (Tex. Civ.

App. 1911), aff'd, 231 U.S. 353 (1913). Because a grant or reservation of mineral estates effects a horizontal severance and creation of two separate estates, each of which is taxable separately, the petition seeking the creation of a chapter 54 municipal utility district may be drawn in such a way as to exclude the mineral estate and reflect that horizontal severance.

We disagree with this construction of the Water Code for two reasons.

First, the severance of mineral interests by the fee owner creates two separate estates in land. "When the severance is accomplished, each estate, that in the minerals in place, and that in the remainder of the land, may be a freehold, or an estate in fee simple." Humphreys-Mexia Co. v. Gammon, 254 S.W. 296, 299 (Tex. 1923) (emphasis added). The estate of a person is not the land itself, but the status or relation that the law permits that person to bear toward the land. Bouldin v. Miller, 28 S.W. 940 (Tex. 1894). The term "estate" in law means the degree, quantity, nature, and extent of one's interest or ownership in land or other tenements. Pan Am. Petroleum Corp. v. Cain, 355 S.W.2d 506 (Tex. 1962); Gibbs v. Lester, 41 S.W.2d 28 (Tex. Comm'n App. 1931, judgm't adopted). It may designate the quantum, extent, or duration of one's ownership of a particular item of property. Gibbs v. Lester, supra. Different persons may, at the same time, bear different relations, each constituting an estate in the land. Bouldin v. Miller, supra.

Sections 54.013 and 54.015 of the Water Code do not provide that a municipal utility district comprise "estates" in land; rather they provide that a district comprise "area" or "land" whose "boundaries" are described by "metes and bounds or by lot and block number." The word "land" ordinarily includes a mineral estate, even when the minerals are severed constructively from the surface. Holloway's Unknown Heirs v. Whatley, 131 S.W.2d 89 (Tex. 1939); see also Tennant v. Dunn, 110 S.W.2d 53 (Tex. 1937); Sheffield v. Hogg, 77 S.W.2d 1021 (Tex. 1934).

Second, the petition to establish a district must describe the "boundaries" by "metes and bounds or by lot and block number." Water Code § 54.015. Boundaries mark out the limits of the territory over which the district has jurisdiction. See 2 E. McQuillan, The Law of Municipal

Corporations § 7.02, at 359 (3d ed. rev. 1988). Boundaries ordinarily are limits established laterally on the surface of the land, and do not extend vertically to mark a district's limits underground or in the airspace. See Doria v. Suchowolski, 531 S.W.2d 360 (Tex. Civ. App. - San Antonio 1975, writ ref'd n.r.e.) ("boundary by acquiescence" is generally a line established by a fence); 11 C.J.S. Boundaries § 1, at 538; cf. M.I.G. Investments v. E.P.A., 523 N.E.2d 1 (Ill. 1988) (boundaries generally involve lateral, not vertical measurement, but exception is made for solid waste fill, which has boundaries expressed in altitude).

"Metes and bounds" refers to a method of measurement by distances and angles from designated landmarks in relation to adjoining properties. B. Garner, Dictionary of Modern Legal Usage 359 (1987); see 11 C.J.S. Boundaries § 4, at 542 ("metes" includes the exact quantity of land in square feet, rods, or acres). Metes and bounds provide a two dimensional measurement of land. A description of land by metes and bounds indicates that its boundaries are on the surface, and that the land is not limited by boundaries at a certain subsurface depth or distance above the ground.

Thus, any district whose creation is approved by the Water Commission consists of land marked out by boundaries on the surface of the earth. The commission is not authorized by the code to approve boundaries that limit the district's jurisdiction vertically. Accordingly, we answer your second question in the negative: The Water Commission may not grant a petition seeking the creation of a chapter 54 municipal utility district whose boundaries exclude the mineral estate or a portion thereof below the surface of the land comprising the district.

We note, however, that after the commission approves the petition seeking creation of the district, but before the district's governing board issues the district's first series of bonds, the code requires the governing body of the district to exclude "land or other property" from the boundaries of the district under certain circumstances. Section 54.701 provides in pertinent part:

> (a) Before the board issues the first series of district bonds payable in whole or in part from taxes, the board may on its own motion call a hearing on the question of the exclusion of land from the district under the provisions of Sections 54.702-54.707 of this

> code, if the exclusions are practicable, just, or desirable.
>
> (b) The board must call a hearing on the exclusion of <u>land or other property from the district on the written petition of any landowner or property owner in the district</u> filed with the secretary of the board before the district issues its first series of bonds payable in whole or in part from taxes. (Emphasis added.)

Section 54.704 of the code governs the petition for exclusion from the district of "land or other property" and provides in relevant part:

> (a) A petition for exclusion of land must accurately describe by metes and bounds or lot and block number the land to be excluded. A petition for exclusion of other property must describe the property to be excluded.

Thus, it appears that the class of property that may be excluded from the boundaries of the district by its governing body <u>after</u> the initial petition to create the district has been approved by the Water Commission is greater than that which the commission may consider when deciding whether to approve the initial petition. No case decided under chapter 54 of the Water Code, which governs municipal utility districts, has construed the phrase "land or other property" that is set forth in section 54.701. However, a case decided under chapter 51 of the code, which governs water control and improvement districts and contains a section virtually identical to section 54.701, has done so.[1]

---

1. The 1925 codification of what later would become chapter 51 of the Water Code provided that the district comprise "land" and provided that "land" may be excluded from the boundaries after its creation under certain circumstances. No mention was made of "other property" or "interests in land." Acts 1925, 39th Leg., ch. 25, § 76, at 106. Two years later, section 76 of chapter 25 was amended to provide that notice for exclusion of "land" from the district must be afforded "to the owner or owners of the
(Footnote Continued)

In <u>Nueces County Water Control & Improvement Dist. No. 4 v. Wilson</u>, 304 S.W.2d 281 (Tex. Civ. App - El Paso 1957, writ ref'd n.r.e.), the court of appeals upheld a trial

_____

(Footnote Continued)
land and all others in anywise interested." Acts 1927, 40th Leg., 1st C.S., ch. 107, § 9, at 501. The "or other property" language was included for the first time in a 1929 amendment to section 76:

>     After a district has been organized, preliminary surveys have been completed, the district does adopt plans for the construction of a plant and improvements, and before the district calls an election for the authorization of construction bonds, there must be exclusions of <u>land or other property</u>, if any such exclusions are deemed practicable, just or desirable, from the district by means and upon conditions as follows . . . .

Acts 1929, 41st Leg., ch. 280, § 8, at 585. Such language was retained in the 1957 amendment to then article 7880-76, V.T.C.S. Acts 1957, 55th Leg., ch. 324, § 1, at 787. No legislative history exists indicating what the legislature meant by the phrase.

The Water Code was enacted in 1971, codifying the general and permanent statutes relating to water rights, water development, water quality control, river compacts, and general law districts. Acts 1971, 62d Leg., ch. 58, at 110. The code was extensively amended by other 1971 amendments, including the addition of chapter 54, which authorizes the creation of municipal utility districts. <u>Id.</u> ch. 84, at 774. Title 4 of the code sets forth those code provisions governing the creation and operation of 14 general law districts. Chapters 50 (containing provisions generally applicable to general law districts), 52 (governing underground water conservation districts), 58 (governing irrigation districts), and 65 (governing special utility districts), in addition to chapters 51 and 54, each contain sections regarding the exclusion of "land or other property" from the boundaries of the districts after the petition seeking the creation of the district has been granted. No case has construed the phrase under any of
(Footnote Continued)

court judgment excluding certain lands owned by one party (who presumably owned both the surface and the subsurface estates) and certain oil and gas leases owned by oil and gas companies from the boundaries of a water control and improvement district. The district comprised 140 square miles of territory, 80 percent of which was submerged by the waters of two bays. The land that one party sought to be excluded comprised 8,400 acres of Mustang Island. The oil leases of the oil and gas companies were located under lands that were submerged by the bays. The plans of the proposed district did not call for, nor was any expenditure of district funds shown for, providing service to any other area other than the town of Port Aransas and the area immediately adjacent thereto. Specifically, the plans did not contain any provision for service either to the lands sought to be excluded or to the submerged oil and gas leases.

In affirming the trial court judgment excluding both the land and the oil and gas leases, the court of appeals stated:

> The only two issues submitted to the jury by the court were whether the lands of appellee Sam E. Wilson, Jr. would be benefited by the proposed improvements, and as to whether the oil and gas leases of the appellee oil companies would be benefited by the proposed improvements. The jury answered both questions in the negative. Appellant objected to said issues because they were immaterial, and because there was no evidence, and insufficient evidence, to support the jury's findings to said issues.
>
> We overrule these points. There was ample evidence to support the findings of the jury. The question of benefit to the lands involved is material, as is provided in the above quoted statute.

---

(Footnote Continued)
these chapters, except for Nueces County Water Control & Improvement Dist. No. 4 v. Wilson, 304 S.W.2d 281 (Tex. Civ. App. - El Paso 1957, writ ref'd n.r.e.).

Id. at 287; see Attorney General Opinion H-881 (1976) (sets forth background of law enacted by legislature granting Corpus Christi certain submerged lands in Corpus Christi Bay to use as public beach).

Thus, under chapter 51 of the Water Code, mineral estates apparently can be excluded under subchapter O of chapter 51 of the code. There is no authority, however, for excluding such estates from the boundaries set forth in the initial petition seeking the creation of the district that must be passed on by the Water Commission. Analogously, we assume that a court, if presented with a question of exclusion of mineral estates under chapter 54 of the code, would conclude that section 54.701 likewise authorized such an exclusion under the phrase "land or other property." See, e.g., 59 Tex. Jur. 3d property §§ 1-4 ("property" is a broad term, referring not to a particular material object but to the right and interest or domination rightfully obtained over such object, with the unrestricted right to its use, enjoyment, and disposition, and includes not only that which is perceptible to the senses but also that which is intangible). We turn now to your first question.

You ask:

> Are the mineral estates located under the boundaries of the Sportsman's World Municipal Utility District taxable for ad valorem tax purposes by the Sportsman's World Municipal Utility District?

Section 21.01 of the Tax Code provides that "[r]eal property is taxable by a taxing unit _if located in the unit on January 1_" (emphasis added).[2] Thus real property that is not located within a taxing unit is not taxable by that taxing unit. Mineral interests are interests in land and

---

2. Section 11, article VIII, of the Texas Constitution sets forth the general rule governing situs of property for purposes of taxation and provides in relevant part:

> All property, whether owned by persons or corporations shall be assessed for taxation, and the taxes paid in the county where situated . . . .

are taxable in the taxing unit where the land is located. Electra Indep. School Dist. v. W. T. Waggoner Estate, 168 S.W.2d 645 (Tex. 1943); Stephens County v. Mid-Kansas Oil & Gas Co., 254 S.W. 290 (Tex. 1923). Real property that is omitted from the appraisal roll of a district is required to be added to the roll and back appraised pursuant to section 25.21 of the Tax Code. In this instance, however, we are unable to answer whether such excluded mineral interests should be back appraised.

We do not have sufficient facts before us to determine whether the initial petition proposing the creation of the district is fatally flawed because of the failure to include owners of the mineral estates. Section 54.014 of the Water Code sets forth the requirements for the petition and provides:

> When it is proposed to create a district, a petition requesting creation shall be filed with the commission. The petition shall be signed by a majority in value of the holders of title of the land within the proposed district, as indicated by the county tax rolls. If there are more than 50 persons holding title to the land in the proposed district, as indicated by the county tax rolls, the petition is sufficient if it is signed by 50 holders of title to the land.

We do not have sufficient facts before us to determine either whether the petition was signed by a majority in value of the holders of title to the land when the value of the mineral estates is added to the value of the surface estates or whether there are more than 50 persons holding title to the land in the district when the owners of mineral estates are added. Nor are we empowered to make such findings of fact.

In the matter of the creation and organization of public and quasi-public corporations, there must be substantial compliance with the conditions precedent required by statute. Durham v. Crutchfield, 578 S.W.2d 438 (Tex. Civ. App. - Texarkana 1979, writ ref'd n.r.e.); State ex rel. City of Fort Worth v. Town of Lakeside Village, 328 S.W.2d 245 (Tex. Civ. App. - Fort Worth 1959, writ ref'd). An irregularity, if harmless, in the creation of a municipal corporation will not work an ouster under quo warranto. Nueces County Water Control & Improvement Dist. No. 4 v. State ex rel. Wilson, 270 S.W.2d 672 (Tex. Civ. App. - San

Antonio 1954, writ ref'd n.r.e.); *State ex rel. Miller v. Troell*, 207 S.W. 610 (Tex. Civ. App. - San Antonio 1918, writ ref'd). In an instance in which the irregularity is deemed sufficiently serious, a proposed district has been declared to be without legal existence. *City of Corpus Christi v. Cartwright*, 288 S.W.2d 836 (Tex. Civ. App. - San Antonio 1956, writ ref'd) (court invalidated proposed district when relevant statute required petition to be signed by "majority in number of the *holders of title to the lands* [within the proposed district] and the owners of a majority *in value of the lands therein*" and the owners of the mineral estates were not considered in determining the sufficiency of the petition; under the facts presented, court found that less than a majority of landowners signed the initiatory petition); *see generally, Yoakum County Water Control & Improvement Dist. No. 2 v. First State Bank*, 449 S.W.2d 775 (Tex. 1969); *Fannin-Lamar-Delta Improvement Dist. No. 3 v. State*, 73 S.W.2d 1101 (Tex. Civ. App. - Texarkana 1934, writ dism'd) (irregularities in creation of levee district would make district bonds voidable, not void).

Moreover, subsection (b) of section 54.701 of the code provides:

> The [governing] board [of the district] must call a hearing on the exclusion of land or other property from the district on the written petition of any landowner or property owner in the district filed with the secretary of the board before the time the first election on the question of the issuance of bonds payable in whole or in part from taxes is called.

The failure to provide for such a hearing amounts to a denial of due process. *Trimmier v. Carlton*, 296 S.W. 1070 (Tex. 1927); *State ex rel. Merrimam v. Ball*, 296 S.W. 1085 (Tex. 1927). We do not have sufficient facts before us to determine, nor are we empowered to so determine, whether such notice was, in fact, afforded.

We cannot answer your first question or other questions about the possible consequences of our answer to your second question. The ultimate resolution of such questions would require us to make findings of fact, which we are not empowered to make, and to evaluate the interests of various parties who have relied on the boundaries of the district established by the commission. *See Walling v. North Central Texas Mun. Water Auth.*, 348 S.W.2d 532 (Tex. 1961); *La Salle*

County Water Improvement Dist. No. 1 v. Guinn, 40 S.W.2d 892 (Tex. Civ. App. - San Antonio 1931, writ ref'd) (when it is claimed that a statute was not followed in establishing the territorial limits of a special district as then constituted, matter can be raised only by the state in a quo warranto proceeding).

## S U M M A R Y

Chapter 54 of the Water Code does not authorize the Texas Water Commission to permit the creation of a municipal utility district that excludes from its boundaries the mineral estates located below a depth of 300 feet under the surface of the land comprising the district. The code does authorize the board of the district to exclude such property after the Water Commission has approved the petition seeking the creation of the district. We are unable to answer whether such mineral interests, which were heretofore improperly excluded from the district, should be added to the district's appraisal roll and back appraised pursuant to section 35.21 of the Tax Code, because we are given insufficient facts to determine the validity of the creation of the district, and we are not empowered to determine such facts. The filing of an information in the nature of quo warranto is the proper method for resolving such a matter, rather than the opinion process.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General