STATE OF TEXAS EX REL. W. R. MERRIAM ET AL. V. M. T. BALL
ET AL.

No. 3936.   Decided June 4, 1927.

(296 S. W., 1085).

1.—Constitutional Law—Local Improvement District—Creation—Taxation
and Benefit.

When a local improvement district is created and the burden of taxation
therein spread by the Legislature itself or by a municipality to which the
State can grant and has granted full legislative power over the subject, the
owners of property in the district have no right to be heard on the question
of benefits.   (P. 536).

2.—Same—Selection of Boundaries by Petitioners for Creation.

A statute providing for creation of a local improvement district and for
taxation of all property therein to meet cost of improvements made thereby
which leaves the selection of boundaries of such district, and hence of the
property to be subjected to its power of taxation wholly to petitioners
invoking its creation by vote of the taxpayers therein, and without pro-
viding any means by which non-consenting property holders therein can be
heard on the question of benefits to their property thereby or the pro-
priety of its inclusion and taxation, is unconstitutional and invalid as being
a taking of their property without due process of law.   Browning v. Hooper,
269 U. S., 396, 70 L. Ed., 153; Hutcheson v. Storrie, 92 Texas, 685, followed.
(Pp. 531-537).

3.—Same—Statute—Fresh Water Supply District.

The Act of April 28, 1919, Laws 36th Leg., First and Second Called
Sessions, 107 (Vernon's Complete Texas Statutes, 1920, Arts. 5107-180 to
5107-266) providing for creation of fresh water supply districts and for
taxation therein, leaves the selection of the boundaries of the district and
of the property to be included and taxed therein wholly to designation by
the petitioners instituting proceedings for creating such district.   The Com-
missioners Court in ordering an election as to its creation by acceptance of
the taxpayers has no power to act except as to boundaries and property so
designated; and no provision is made whereby any property owner included
can anywhere have a hearing as to whether it will be benefited by the
improvement or can justly be subjected to taxation or encumbered by bonds
voted therefor.   The statute in question was unconstitutional; the district
attempted to be created thereunder was invalid; and the officers thereof
were properly restrained in proceedings *quo warranto* from acting under
the statute in such capacity.   (Pp. 531-537).

Error to the Court of Civil Appeals for the Ninth District, in
an appeal from Jefferson County.

The State, on relation of Merriam and others, brought suit by
the County Attorney in the nature of *quo warranto* against Ball
and others acting as Supervisors of Fresh Water Supply Dis-
trict No. 1. Judgment for plaintiff declaring such district
invalid was on appeal by defendants, reversed and rendered in
their favor (245 S. W., 1012), and appellee obtained writ
of error.

*Marvin Scurlock, Holland & Holland, W. R. Blain, J. A. McNair,* and *A. D. Lipscomb,* for plaintiffs in error.

The rule requiring that the Legislature must either determine directly what property will be benefited in an assessment district, or provide for a hearing of objecting property owners, applies with special force to an ad valorem taxing district, because otherwise all the various properties included will be inevitably taxed annually a certain percentage of their full values without reference to benefits. Fallbrook Irrig. Dist. v. Bradley, 164 U. S., 174; Dallas County Levee Dist. v. Looney, 207 S. W., 312; Taylor v. Boyd, 63 Texas, 542; Kansas City R. Co. v. Road Imp. Dist., 256 U. S., 661.

For private promoters to select territory of a district to be taxed for a local improvement over the protest of owners of included property, without restriction as to territory or class of territory to be included and without restriction as to the amount of taxes which the voters of the selected territory may impose upon all the property included in it, except that it must be a uniform percentage of the full value of all property included, whether benefited or not, renders the organization and the Enabling Act invalid because violative of the due process clauses of the State and Federal Constitutions and is a wrong of which relators may complain whose property is in their honest belief too far removed from the proposed improvements, and too fully supplied already, for them to have any benefit of the improvements. Shumway v. Bennett, 29 Mich., 451; Brandenstein v. Hoke, 35 Pac., 562; Moulton v. Parks, 30 Pac., 620; Browning v. Hooper, 269 U. S., 396.

The general right of resort to the courts (for relief against abuse of legislative discretion or fraud) cannot supply the requirement that in establishing a taxing district the justice of taxing given territory be determined by some legislative ascertainment or restriction or classification or be determnied on a hearing before proper agencies where the property owner may show grounds for exclusion of his property. Art. 2, Sec. 1, Constitution of Texas, limiting courts of the State to the exercise of judicial powers; Dillon on Municipal Corporations, Sec. 353; 28 Cyc., 183; Norris v. City of Waco, 57 Texas, 641; Galesburg v. Hawkinson, 75 Ill., 152; In re Brenke, 105 Minn., 84, 117 N. W., 157; Winkler v. Hastings, 85 Neb., 212, 122 N. W., 858; 12 C. J., 1234-7.

Obvious and gross injustice of taxation for a local improvement, inherent in the scheme of organization, renders void the

proceedings to establish a taxing district, even within the restricted sphere of Federal restraint on State action. Art. 16, Sec. 59 (c) of the Constitution of Texas; Gast Realty Co. v. Schneider, 240 U. S., 59, 60 L. Ed., 526; Myles Salt Co. v. Iberia Par. Drainage Dist., 239 U. S., 480; Hutcheson v. Storrie, 92 Texas, 697, 51 S. W., 850.

The district was void because the act under which it was attempted to be organized was unconstitutional by reason of the arbitrary power intended to be bestowed by it upon private promoters over the property of others who assert that they will have no benefit from, but will be taxed for, the object sought to be attained.

There are no cases in which any similar arbitrary power was given into the hands of private promoters except the cases of Shumway v. Bennett, 29 Mich., 451; Moulton v. Parks, 30 Pac., 620; Brandenstein v. Hoke (Cal.), 35 Pac., 562; Board v. Abbott (Kan.), 34 Pac., 418; and People v. Parks, 58 Cal., 624, in all of which the acts were emphatically denounced by the courts.

*J. W. Williams* and *Sonfield, Nall & King,* for defendants in error.

In quo warranto the question is confined to a determination whether the corporation can legally exist, and if so, whether the conditions precedent to its organization have been complied with. State v. DeGress, 53 Texas, 387; 22 R. C. L., 656, 668, 711; 32 Cyc., 1425.

The district being formed in the manner provided by the Act, its validity cannot be affected by the motives or intentions of the promoters. State v. Waxahachie, 81 Texas, 626; Kellum v. Smith, 18 Texas, 843; Franklin Ins. Co. v. Humphrey, 65 Ind., 549, 32 Am. R., 78, 86.

The adoption by the board of supervisors of a plan of improvement, incomplete, partial, unfair or impractical, would not invalidate the district. 32 Cyc., pp. 1424 and 1425; State v. Smith, 55 Texas, 451; State v. Rigsby, 43 S. W., 271; Price v. County School Trustees, 192 S. W., 1140.

The inclusion of land within the district which will not be benefited, or the adoption of a plan which will not benefit some of the land in the district, will not invalidate the district. Same authorities, and People v. Cooper, 29 N. E., 872.

If land, not in reference to its present or any particular use, but in its general relation, can be benefited directly or indirectly by the improvement, it is rightfully included in the district, and

the evidence establishes that all lands in the district will be benefited.    25 R. C. L., 144; 2 Page & Jones, Taxation by Assessment, Sec. 653; Georgia R. & Banking Co. v. Decatur, 137 Ga., 537, 40 L. R. A. (N. S.), 935; Louisville & Nashville R. Co. v. Barber Asphalt Co., 197 U. S., 430, 49 L. Ed., 819; Lipes v. Hahn (Ind.), 1 N. E., 871; Minn. R. Co. v. Lindquist, 93 N. W., 103; Bennett v. City of Emmetsburg, 115 N. W., 589; State v. Kansas City, 134 S. W., 1007; Northern P. R. Co. v. Seattle, 46 Wash., 674, 91 Pac., 244, 12 L. R. A. (N. S.), 121.

The evidence establishing the need of a fresh water supply throughout the district, the fact that the water would not be used by some because the property is vacant, or by reason of present use of property, or because such parties have made provision for a water supply, would not invalidate the tax or the district.    Bennett v. City of Emmetsburg, 115 N. W., 589; Batterman v. New York, 73 N. Y. Sup., 44; Richmond & A. R. Co. v. Lynchburg, 88 Va., 473; Myers v. Chicago, 63 N. E., 1037; Atchison v. Price, 45 Kan., 296, 25 Pac., 605; St. Joseph v. Owen, 110 Mo., 445, 19 S. W., 713; McGilvery v. Louistown, 13 Idaho, 338, 90 Pac., 348; Wright v. Boston, 9 Cush. (Mass.), 233; Downer v. Boston, 7 Cush., 277; Lawrence v. Grand Rapids, 166 Mich., 137, 131 N. W., 581; Bishop v. Tripp, 15 R. I., 466, 8 Atl., 692.

The *ad valorem* method of taxation is valid, and the undisputed evidence establishing that all the territory within the district is adapted to the kind of local improvement contemplated, an *ad valorem* tax for such improvement is valid.    Dallas County Levee Dist. v. Looney, 207 S. W., 310; Wharton Co. Dr. Dist. v. Higbee, 149 S. W., 381; Houk v. Little River Dr. Dist., 239 U. S., 254, 60 L. Ed., 266; In re Madera Irrig. Dist. Bonds, 92 Cal., 296, 14 L. R. A., 755.

The purposes for which fresh water supply districts are authorized are public purposes, and the taxes authorized therein are for public purposes.    Re: Bonds, Madera Irr. Dist., 92 Cal., 296, 14 L. R. A., p. 761, *et seq.;* Falbrook Irr. Dist. v. Bradley, 164 U. S., 112, 41 L. Ed., 381-390; Hester & Roberts v. Donna Irr. Dist., 239 S. W. (writ of error refused), 994-5.

The Constitution, authorizing the creation of conservation districts, leaves the mode and manner of their creation to the Legislature; that such districts are created under general law, to become applicable in any part of the State within boundaries defined in the manner prescribed, upon a majority vote of the qualified property tax-paying voters, is not a delegation of legislative power.    Falbrook Irr. Dist. v. Bradley, 164 U. S., 112,

41 L. Ed., 369; Houck v. Little River Drainage Dist., 239 U. S., 254, 60 L. Ed., 266; Re: Bonds, Madera Irr. Dist., 92 Cal., 296, 14 L. R. A., 765; Graham v. City of Greenville, 67 Texas, 63; Werner v. City of Galveston, 72 Texas, 22; Johnson v. Martin, Wise & Fitzhugh, 75 Texas, 33; Spears v. City of San Antonio, 223 S. W., 166.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

This case is here by writ of error from the Court of Civil Appeals for the Ninth District. It is a quo warranto proceeding, filed in one of the District Courts of Jefferson County by Marvin Scurlock, County Attorney of that county, upon the relation of W. R. Merriman and others against M. T. Ball and others, constituting the Board of Supervisors and Tax Collector of Fresh Water Supply District No. 1 of Jefferson County, charging usurpation, and praying for a judgment of ouster. The case was tried before the court without a jury, and judgment entered in favor of the relators against the respondents, to the effect that Fresh Water Supply Districts No. 1, of which respondents were officers, was invalid, and that for this reason they were guilty of usurpation, etc. Upon appeal to the Court of Civil Appeals this judgment was reversed and rendered, and a judgment entered declaring the district legally organized and valid in all respects. For a full statement of the case see the opinion of the Court of Civil Appeals, 245 S. W., 1012.

Fresh Water Supply District No. 1 of Jefferson County was organized under Chap. 48, Acts of the First and Second Called Sessions of the Thirty-sixth Legislature, and may be found by reference to Arts. 5107-180 to 5107-266, Vernon's Complete Texas Statutes (1920).

In disposing of this case we find it only necessary to consider one question—that is, the constitutionality of the Act under which the district was organized.

It is unquestioned but that the provisions of the law as found in the legislative Act were followed in the organization of the district. This Act in effect provides for the organization of local, improvement districts, for the conservation, transportation and distribution of fresh water from lakes, pools, reservoirs, wells, springs, creeks, and rivers, for domestic and commercial purposes, as contemplated by Sec. 59, Art. 16 of the Constitution of the State. Vernon's Complete Texas Statutes (1920), Art. 5107-180. The method provided is the initiative and referendum, and the attack made upon it which we find necessary to

notice is whether or not the agency selected by the Legislature for giving those to be affected by the creation of the district a hearing was authorized by the statute to pass upon the boundaries of the district and to determine whether or not the creation of the district would be of benefit to the territory included therein.

Arts. 5107-181 and 5107-184 read as follows:

"Art. 5107-181.—When it is proposed to create a Fresh Water Supply District, there shall be presented to the Commissioners Court in which the lands to be included in such district are located, or to the County Judge of the county, if the Commissioners Court is not in session, a petition signed by fifty or by a majority of the qualified voters of such proposed district who shall own land within the district proposed, setting forth the proposed boundaries thereof, the general nature of the work proposed to be done, the necessity therefor, and the feasibility thereof and designating a name therefor, which shall include the name of the county in which it is situated, and upon presentation of such petition it shall be the duty of the Commissioners Court or the County Judge of such county if the court be not in session to forthwith fix a time and place at which said petition shall be heard before the Commissioners Court of the county wherein it is filed, which date shall be not less than fifteen nor more than thirty days from the date of the order, and to order and direct the County Clerk of such county, as ex-officio clerk of the Commissioners Court thereof, to issue notice of such time and place of hearing, which notice shall inform all persons concerned of the time and place of hearing and their right to appear and contest the genuineness of such petition and the signature(s) thereto and whether said petitioners are qualified voters of such proposed district, and owners of land therein and to deliver such notice to any adult who is willing to execute the same by posting as herein directed."

"Art. 5107-184.—At the same time and place for the hearing of the petition or such subsequent date as may then be fixed the court shall proceed to examine such petition for the purpose of ascertaining the sufficiency thereof, and any person interested may appear before the court in person or by attorney and offer testimony touching the sufficiency of such petition. Such court shall have jurisdiction to determine all issues raised touching the sufficiency of such petition. Such hearing may be adjourned from day to day and from time to time as the facts may require.

The court shall have power to make all incidental orders necessary in respect to the matters before it."

The statute in a definite way regulates the subject of the elections, and provides for an order, after a canvass of the voters, of the Commissioners Court, establishing the district, in the event of a favorable vote therefor.

It will be seen from Art. 5107-181 that when it is proposed to create a district, a petition must be presented to the Commissioners Court signed "by fifty or by a majority of the qualified voters of such proposed district, who shall own land within the district proposed, setting forth the boundaries, the general nature of the work to be done, the necessity therefor and the feasibility thereof," etc. When this petition is presented, it becomes the duty of the court to fix a time and place at which the petition shall be heard, and to require the clerk to issue the statutory notice. The statute requires that this notice shall inform all persons concerned of the time and place of hearing, and their right "to appear and contest the *genuineness* of such petition, the *signatures thereto,* and whether such *petitioners are qualified voters* of such proposed district and *owners of land* therein."

Art. 5107-184 prescribes what shall take place at the hearing. At the time and place fixed by the commissioners for hearing the petition, it is made the duty of the court to proceed "to examine such petition for the purpose of ascertaining the sufficiency thereof, and any person interested may appear before the court in person or by attorney and offer testimony touching the sufficiency of the petition." The article then gives the court jurisdiction to determine "all issues raised touching the *sufficiency of such petition.*"

Art. 5107-185 prescribes what must appear or what must be found by the court before it orders an election to create the district. The court must find in favor of the petitioners for the establishment of the district *"according to the boundaries as set forth in said petition."* If upon such hearing it be found that the petition (a) is signed by the requisite number of qualified voters of such proposed district, who own lands therein, and (b) that such petition conforms to the provisions of Art. 5107-181 supra, then they must order the election and take the necessary subsequent steps to bring about the submission of the question of its creation to the voters of the district, etc.

Reading these several articles quoted and referred to, it is plain, we think, that the question of the boundaries of the dis-

trict is confided solely to those who sign the petition for its creation, and that no discretion or power is lodged in the Commissioners Court to determine or fix these boundaries, or to pass upon the question of benefits to the lands to be embraced in the district. In other words, the statute plainly fails to provide for a hearing on the question of the boundaries of the district and on the question of benefits to the lands included in it. We may say that the statute here under review, providing for the organization of Fresh Water Supply Districts, in failing to provide for a hearing on the question of benefits and in requiring the Commissioners Court to grant the petition for an election "according to the boundaries set forth in said petition," is *sui generis* among the Texas Water, Reclamation, Drainage, and Navigation Laws. All other district laws, in so far as called to our notice, use language intended to confer power on the statutory agency selected to hear and determine questions of boundary and benefits. Rev. Stats., Arts. 7626, 7627, 7814, 7816, 7978, 7979, 8101, 8102, 8103, 8204, 8205; Trimmier v. Carlton (Texas Supreme Court, not yet officially reported); Embree v. Kansas City Road District, 240 U. S., 242. The construction which we have given the Act here involved was placed upon the law by the Commissioners Court when the petition for the organization of the district was heard. At that time Mr. Will Merriman, who represented some 200 or 300 of the people of the proposed district, appeared before the County Commissioners. As to what took place there, his testimony is as follows:

"At the time they had that hearing I offered to make some showing before the court, I contested it and asked for a hearing. The contest that I was making was the question of being taken into the Fresh Water District. Mr. Herbert was also there, and the same proposition concerned him as it did me, and that was his contention; he did not think his land ought to be included, and did not think he could be benefited by it. He wanted his land excluded from the district. When we made the contest the Commissioners Court told me that they could not take any action in the case any further than consider the sufficiency of the petition and the genuineness of the signatures. *They refused to hear me on the question of being included in the proposed district.*" (Italics ours.)

That the above construction of the articles referred to is correct, we think is conceded by the supplemental brief of M. T. Ball et al. filed in the Court of Civil Appeals. In that brief is found the following:

"We come now to consider the objection that the property

owner is, under the Act, afforded no opportunity for a hearing as to the creation of the district or on the question of benefits.

"We lay down the broad proposition that the Act is not unconstitutional because affording no opportunity to the land owner to object to the inclusion of his property in the district.

"The mere inclusion of the property within the district creates no charge upon the land. Upon the presentation of the petition to the Commissioners Court, the same is set down for a hearing as to the genuineness of the petition, the signatures thereto, and whether the petitioners are qualified voters of the proposed district and owners of land therein.

"If, upon a hearing of the petition, it is found in all things valid and sufficient, it is made the duty of the Commissioners Court to order an election whereat the proposition is submitted for or against the fresh water supply district, and for the election of five supervisors and an assessor and collector. If the proposition is adopted and the supervisors elected, the board organizes, and it may order an election on the proposition of the issuance of bonds and levy of taxes in payment thereof for proposed improvements.

"It is thus seen that the organization of the district imposes no burden and creates no charge upon any property in the district. Through the first election, the inhabitants within the proposed boundaries merely accept the terms of the Act and become thereby a public corporation. This being true, the mere organization of the district did not take any property without due process of law; in fact, did not in any manner affect any land within the district."

It is true that the organization of a district does not by virtue of that act alone impose any tax burden on the property included therein; but it is the first and a very essential step having for its object the issuance of bonds and the levy of taxes. The statutory activities of such districts necessarily involve large expenditures of money. Their powers are set forth in various articles of the statutes. (See generally Vernon's Complete Texas Statutes (1920), Arts. 5107-180, 5107-196, 5107-197 to 5107-203.) To accomplish these purposes the districts, upon vote of the qualified electors, are authorized to issue bonds and levy taxes on all the lands in the districts. Vernon's Statutes, supra, Arts. 5107-197, 5107-205 to 5107-243, 5107-263, 5107-265.

The districts are not capitalized, and it is apparent they cannot accomplish their purposes except by the levy of taxes or by both the issuance of bonds and levy of taxes. As was said by the Supreme Court of the United States in the case of Fallbrook

Irrigation District v. Bradley, 105 U. S., 112, 176: "In the Act under consideration, however, the establishment of its boundaries, and the purposes for which the district is created, if it be finally organized by reason of the approving vote of the people, will almost necessarily be followed by and result in an assessment upon all the lands included within the boundaries of the district." It is plain to us that one of the objects of organizing districts of this character is to issue bonds and collect taxes, that in fact they are when organized local taxation districts for the purpose of making local improvements. At no stage of any of the proceedings of the district, either at or during the course of organization, or thereafter, is any provision made by the law for a hearing on the question of benefits to the land included in the district, or what land shall be included. The petitioners themselves fix the boundaries, and no discretion is confided to the Commissioners Court to change or modify them. The petitioners in preparing and presenting the petition include such lands in the district as their judgment and discretion may dictate, and from their action there is no appeal to any agency having authority to give a hearing thereon and determine the justness and correctness thereof. This is not due process under either the Federal or State Constitution. When a local improvement territory is selected and the burden of taxation spread by the Legislature, or by a municipality to which the State can grant and has granted full legislative power over the subject, the owners of property in the district have no constitutional right to be heard on the question of benefits. Browning v. Hooper, Adv. Ops. (269 U. S., 396, 70 L. Ed., 153), 1925-6, p. 153; Valley Farms Co. v. Westchester, 261 U. S., 155; Hancock v. Muskogee, 250 U. S., 454, 459; Withnell v. Construction Co., 249 U. S., 63, 69. But where, as in this case, the district is not created by the Legislature, it is essential to due process that a hearing be had on the question of benefits, and as to what lands shall be included in the district. Browning v. Hooper, supra; Hutcheson v. Storrie, 92 Texas, 685, 693; Norwood v. Baker, 172 U. S., 269; Fallbrook Irrigation District v. Bradley, 165 U. S., 112, 174.

Browning v. Hooper, supra (the Archer County case recently decided by the Supreme Court of the United States) necessarily rules this case. In that case the Legislature did not create the road district, levy the tax, or fix the amount to be raised. There was nothing in the law to limit the action of the petitioners in selecting the property to be assessed. Subject to a vote of a district of their own choice, the petitioners' designation of the

boundaries of the district, and therefore the property to be taxed, was absolute. There was no hearing before any agency, as to the land to be included in the district, nor upon the question of benefits. The Supreme Court of the United States held the district void, in part saying:

"But it is essential to due process of law that such owners be given notice and opportunity to be heard on that question where, as here, the district was not created by the Legislature, and there has been no legislative determination that their property will be benefited by the local improvement. Appellants were denied all opportunity to be heard. No officer or tribunal was empowered by the law of the State to hear them, or to consider and determine whether the road improvements in question would benefit their lands. The act is repugnant to the due process clause of the Fourteenth Amendment."

The other authorities cited, including Hutcheson v. Storrie by this court, are to the same effect.

The defendants in error strongly rely upon the case of Re: Bonds of the Madera Irrigation District, 92 Cal., 296, 14 L. R. A., 755, by the Supreme Court of California, as sustaining the right to create a public corporation similar to that here involved without a hearing as to boundaries or on the question of benefits. In an unchallenged quotation from the statutes of California, 1887, p. 30, the plaintiffs in error show that the California Act did provide for a hearing on both questions. The California Code of that date is not available, but we assume counsel have correctly quoted it. See also the law as copied on the margin in the case of Fallbrook Irrigation District v. Bradley, 165 U. S., 112, 116. The Madera case is therefore clearly not in point. But if so, still we are compelled, upon both reason and authority, to follow the decision of the Supreme Court of the United States in Browning v. Hooper, cited above.

Since the Act under which Fresh Water Supply District No. 1 of Jefferson County is created is in violation of the due process clauses of both the Constitution of the State of Texas and the United States, the judgment of the trial court was a correct one, and that of the Court of Civil Appeals erroneous.

The judgment of the Court of Civil Appeals is accordingly reversed, and that of the District Court affirmed.