**SOUTHERN PINE LUMBER COMPANY et al., Appellants,**

**v.**

**NEWTON COUNTY WATER SUPPLY DISTRICT, Appellee.**

No. 6264.

Court of Civil Appeals of Texas.

Beaumont.

April 23, 1959.

Rehearing Denied May 20, 1959.

B. F. Whitworth and Grady Trimble, Jr., Jasper, Ward R. Burke, Diboll, E. A. Lindsey, Newton, for appellant.

A. E. Rogers, Newton, E. G. Aycock, Ft. Worth, for appellee.

McNEILL, Justice.

The suit was instituted in the district court of Newton County by appellee Newton County Water Supply District to collect taxes, penalties and interest for the years 1956 and 1957 allegedly owed by appellant Southern Pine Lumber Company to appellee on certain lands in Newton County. The cause was tried before the court and a jury, and upon verdict judgment was rendered for appellee for the sum of $11,978.-05, plus 10 percent attorneys fees provided by Article 7880–73, Vernon's Tex.Ann. Civ.St. This appeal has resulted from the judgment rendered.

Appellant bases its appeal upon five points, the first two of which assert that the Act of the Legislature creating the Newton County Water Supply District, being Chapter 359, 54th Legislature, 1955, p. 910, is unconstitutional. The third point urges that there were no valid levies of

taxes for the years involved. The fourth point urges that the taxes levied against appellant's property were invalid for the reason that substantial amounts of personal property in the district were omitted from the tax rolls for the years involved, and that same resulted from the failure of appellee's tax officials to make a bona fide effort to put such property on the tax rolls. The fifth point urges that certain issues as found by the jury having to do with the assessment of personal property were answered by the jury unfavorably to it and in such way as to be against the great weight and overwhelming preponderance of the evidence.

We must first pass upon the two points urging the invalidity of the water supply district. The Act establishing this district contains seven sections, the first five of which are now Article 8280–174, Vernon's Texas Annotated Civil Statutes. Section 3 of this article is as follows:

"The district shall have and exercise, and is hereby vested with, all of the rights, powers, privileges, authority and duties conferred and imposed by the General Laws of this State now in force or hereafter enacted, applicable to water control and improvement districts created under authority of Section 59, Article XVI, of the Constitution, but to the extent that the provisions of any such General Laws may be in conflict or inconsistent with the provisions of this Act, the provisions of this Act shall prevail. All such General Laws are hereby adopted and incorporated by reference with the same effect as if incorporated in full in this Act. It shall not be necessary for the Board of Directors to call a confirmation election or to hold a hearing on the exclusion of lands or a hearing on the adoption of a plan of taxation, but the ad valorem plan of taxation shall be used by the district."

Article 7880–76 of the General Laws referred to in the above section provides that

when a district is organized by petition and order of the Commissioners Court or State Board of Water Engineers, before an election is called a hearing must be conducted as to whether "there must be exclusions of land or other property" from the District. Appellant says that while the last sentence of Sec. 3 above quoted eliminates the necessity for a hearing as to exclusions of land it does not eliminate the hearing as to exclusions of "other property" and the Act therefore discriminates against land and the owners of land and in favor of personal property and the owners of personal property.

■■ It is fundamental that when a law duly enacted is attacked as unconstitutional it is presumed to be valid and doubts as to its unconstitutionality should always be resolved in favor of constitutionality and a construction will be given it, if reasonable, that will uphold it. Duncan v. Gabler, 147 Tex. 229, 215 S.W.2d 155. A study of the related articles, having in mind this rule of construction, brings us to the conclusion that the last sentence of Sec. 3 above is intended to and does do away with any and all hearings on exclusions not only as to land but also as to all other property in the district, for the first section of the Act provides that the boundaries of the District shall be co-incident with the boundaries of Newton County and Sec. 3 provides that the ad valorem plan of taxation shall be used by the District. To have provided for hearings as to exclusions of lands would have conflicted with Sec. 1 of the Act establishing the boundaries of the District. And by adopting the ad valorem plan in accordance with the general scheme of taxation without modification, it effectively made personal property as well as lands taxable. Appellant's first point is without merit.

Appellant's second point asserts since the Act creating the water supply district contains no express finding that the lands included therein would be benefited and does not give the right to a determination by the directors of the District that the lands of

the appellant would be benefited by inclusion therein, the Act is unconstitutional. It cites the following cases in support: State ex rel. Merriman v. Ball, 116 Tex. 527, 296 S.W. 1085; Browning v. Hooper, 269 U.S. 396, 46 S.Ct. 141, 70 L.Ed. 330; Hydrocarbon Production Company, Inc. v. Valley Acres Water District, 5 Cir., 204 F.2d 212.

■ A distinction is drawn between districts which are established directly by a special act of the Legislature in carrying out the mandate of and in conformity with the Conservation Amendment to the Constitution of the State (Art. XVI, Sec. 59) Vernon's Ann.St., and those districts organized primarily for private purposes under the permissive terms of this section of Art. XVI of the Constitution and the general statutes. Brazos River Conservation and Reclamation District v. McCraw, 126 Tex. 506, 91 S.W.2d 665, 670. This case holds that as to those districts first mentioned, as is the Brazos River, etc. District, no hearing is necessary on the question of benefits. While the Brazos River Conservation case involved a much larger area than the Newton County Water District, yet the area in and of itself is not controlling and the language making the Water Supply District a governmental agency and body politic with the powers of government therein specified, and finding that the creation of such district is essential to the accomplishment of the purposes set forth in said Sec. 59, Article XVI, of the Constitution has the same effect as the language creating the Brazos River Conservation District, and makes the Newton Water Supply District one of the class first above mentioned having the full status of a governmental agency. The emergency clause of the Act creating the Newton County District reads:

"Sec. 6. The fact that there is a pressing need to develop the water resources within the boundaries of said district which otherwise are wasted to the Gulf of Mexico creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be suspended, and said Rule is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted."

The district is a political subdivision of the State and stands upon the same footing as counties. Bennett v. Brown County Water Improvement District, 153 Tex. 599, 272 S.W.2d 498. It logically follows that property owners of the District are not entitled to a hearing on benefits to their property. Brazos River Conservation and Reclamation District v. McCraw, supra; Hancock v. City of Muskogee, 250 U.S. 454, 455, 39 S.Ct. 528, 63 L.Ed. 1081; Wight v. Police Jury, 5 Cir., 264 F. 705; Smith v. Wilson, D.C., 13 F.2d 1007.

Appellant relies upon Hydrocarbon Production Co., Inc. v. Valley Acres Water District, supra. This was a case also decided by the 5th Circuit. That case discussed Sec. 59 of Article XVI and Sections 52 and 56 of Article 3 of the Constitution. Among the holdings there made was the following:

"Further applying the principles above stated it is clear that in this case, where the Legislature itself directly created the district, the appellant has no constitutional right to a hearing on the question of benefits; that in carrying out the expressed constitutional mandate to conserve and use water for the irrigation of arid lands of the State the Legislature could authorize taxes to be imposed ad valorem upon all property within the District without regard to benefit. * * * Determination of the method of taxation is within the province of the Legislature." [204 F.2d 219.]

There quoted is the following from Memphis & Charleston R. Co. v. Pace, 282 U.S. 241, 245, 51 S.Ct. 108, 109, 75 L.Ed. 315:

"Whether the tax shall be statewide or confined to the county or local district wherein the improvement is made, and whether it shall be laid generally on all property or all real property within the taxing unit, or shall be laid only on real property specially benefited, are matters which rest in the discretion of the state, and are not controlled by either the due process or the equal protection clause of the Fourteenth Amendment."

Appellant's reliance upon State ex rel. Merriman v. Ball, supra, cannot aid it. There the Act providing for local landowning voters to initiate proceedings and having no provision for a hearing as to special benefits to lands in the district were held invalid. The following quotation (296 S.W. at page 1087) serves to explain the difference between that case and the present:

"At no stage of any of the proceedings of the district, either at or during the course of organization, or thereafter, is any provision made by the law for a hearing on the question of benefits to the land included in the district, or what land shall be included. The petitioners themselves fix the boundaries, and no discretion is confided to the commissioners' court to change or modify them. The petitioners in preparing and presenting the petition include such lands in the district as their judgment and discretion may dictate, and from their action there is no appeal to any agency having authority to give a hearing thereon and determine the justness and correctness thereof. This is not due process under either the federal or state Constitution (Const.U.S. Amend. 14, sec. 1; Tex.Const. Art. 1, sec. 19)."

Immediately following the above is the language (296 S.W. at page 1088) which we believe is pertinent to the case before us:

"When a local improvement territory is selected and the burden of taxation

spread by the Legislature, or by a municipality to which the state can grant and has granted full legislative power over the subject, the owners of property in the district have no constitutional right to be heard on the question of benefits. Browning v. Hooper, 269 U.S. 396, 46 S.Ct. 141, 70 L.Ed. 330; Valley Farms Co. of Yonkers v. Westchester County, 261 U.S. 155, 43 S.Ct. 261, 67 L.Ed. 585; Hancock v. City of Muskogee, 250 U.S. 454, 459, 39 S.Ct. 528, 63 L.Ed. 1081; Withnell v. Ruecking Construction Co., 249 U.S. 63, 69, 39 S.Ct. 200, 63 L.Ed. 479."

In view of the citation of Browning v. Hooper (also relied upon by appellant) by the Supreme Court on the last proposition we deem comment thereon unnecessary. We hold the Act creating the Newton County Water Supply District is valid as against the attacks made. No express finding that lands included in the District would be benefited was necessary; implicit in the passage of the Act are all necessary findings of fact. Railroad Commission of Texas v. Texas & Pac. R. Co., 138 Tex. 148, 157 S. W.2d 622(4); Fallbrook Irrigation District v. Bradley, 164 U.S. 112, 174, 17 S.Ct. 56, 69, 41 L.Ed. 369, 394.

If our construction of the Act under discussion of appellant's first point is wrong and it is held that the Act intended hearing as to exclusion of property other than land, still this does not make the Act unconstitutional. Texas & P. Ry. Co. v. Ward County Irrigation District No. 1, Tex.Com.App., 112 Tex. 593, 251 S.W. 212. In that case an irrigation district had been organized under the permissive terms of the general legislature which provided that owners of the fee of the land included may petition the Board of Directors to exclude their land from the District. The railroad company made an attack upon the District, asserting that since it was the owner of only an easement over the land through the District and had no right to petition the Board to be excluded, the Act was discriminatory. The

court there said on this point, 251 S.W. at page 217:

"In giving the right to owners of land by petition to have their land excluded from the district, it was entirely competent for the Legislature to limit that right to owners of the fee. It was not essential that every one having an interest in the land should be given the right."

To the same effect is Western Union Tel. Co. v. Wichita County Water Imp. District, Tex.Civ.App., 19 S.W.2d 186, affirmed Tex.Com.App., 30 S.W.2d 301.

◼ Appellant's third point asserts that no valid tax levy was made by the District for either year. By introduction of the current tax roll for each year and testimony of the 'Collector that the taxes shown to be due thereon by appellant for each year were not paid, appellee made a prima facie case. Art. 7336, R.S.1925, as amended, Vernon's Ann.Civ.St. art. 7336. Appellant, however, placed E. A. Meek, the secretary of the Board, on the stand for the purpose of showing what the minutes of the Board revealed as to tax levies for each year, and proved, that as far as he could find, the minutes for the year 1956 showed the meeting of the Board 9–7–56, with all directors present, when the following took place:

"Motion was made by Director W. H. Talley and seconded by Director C. C. Leach to adopt the prepared budget (copy to be attached). All members voted yea, no members voted nay."

The attached budget listed salaries of employees, office, Equalization Board and other expenses, totaling $72,436.36. Below that were the figures:

"25,901,000 @ 40C    $103,604,000—100% Collection
                      72,520,000— 70% Collection."

The secretary could only find the following minutes, 8–19–57, as bearing upon the question of the 1957 tax levy:

"Then after a lengthy discussion of the District's finances, tax collections, new bonds, and its different earmarked funds, it was agreed by four (4) Board members and the fiscal agents that the District's tax rate should not be raised until after an election to abolish the District, if there be such an election within the next twelve (12) months; and only then raise the tax rate if there be a need for one to finance the bonds to be issued and sold at a later date."

Appellee proved by the testimony of the Secretary and two other Board members that the District by resolution setting the tax rate at 40¢ per $100 valuation was adopted for the year 1956 at the September, 1956, meeting, and a similar resolution was adopted for the year 1957 at the August 1957 meeting of the Board. This sort of proof of the action by the Board does not conflict with nor contradict the minutes above set forth, but supplied the only existing evidence of the actual orders of the Board. Yorktown Independent School Dist. v. Afflerbach, Tex.Com. App., 12 S.W.2d 130, 132; Doherty v. San Augustine Independent School Dist., Tex. Civ.App., 178 S.W.2d 866. Appellant's third point is therefore overruled.

Appellant's 4th and 5th points will be discussed together. These grow out of appellant's defense that substantial amounts of personalty were omitted from the tax rolls.

◼◼ The trial court submitted certain Special Issues involving taxes for the year 1956 to the jury: First, whether substantial amounts of personal property were omitted from the tax rolls; second, whether appellee's tax officials failed to make a bona fide effort to assess all personal property; third, whether substantial amounts of personal property were systematically omitted from the tax rolls, and fourth, whether substantial amounts of personal property were deliberately omitted from

the tax rolls. Similar issues were submitted for the year 1957. The verdict of the jury was to the effect that no substantial amounts of personal property were omitted from the rolls; that the taxing officials had not failed to make a bona fide effort to assess all personal property and that there was no systematic or deliberate omission of personal property from the tax rolls. Since appellant has centered its defense to the action upon the ground that substantial amounts of personal property were deliberately and systematically omitted from the tax rolls for the years involved, and that the tax officials failed to make bona fide effort to assess all personal property in the district, it has assumed an onerous burden. It must not only show that certain amounts of personal property were omitted from the tax rolls, but that this omission has caused appellant's taxes to be excessive or substantially higher than they should have been if the omitted property had been on the rolls. State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569. Measured by these rules, we inquire into the facts:

Appellant offered the following: C. L. Todd, Vice President, First National Bank of Newton, testified that at the close of business December 31, 1955, the bank had on deposit $2,614,155.17 and at the close of business a year later it had on deposit $2,961,670.38. He stated that well over a million dollars of these funds were government funds and funds belonging to charities and other exempt organizations; that he did not know whether many of the depositors resided in Newton County or elsewhere nor whether there were outstanding orders or drafts on these deposits. This testimony failed to show any one deposit belonging to any resident of the district which was not assessed.

Appellant also offered a copy of the 1954 U.S. census of agriculture of Newton County. It stated that it was a preliminary one and subject to revision. This census showed that there were 1,033 horses and mules, 17,959 head of cattle and calves, and 9,255 hogs and pigs in Newton County. Appellant's witness L. M. Newton testified that he was a stockraiser in Newton County and that between the date of the census and 1956 the amount of cattle had decreased about 25 percent, but was about level for 1957. He guessed or estimated that they were worth $50 per head. It was not shown in the testimony that any specific livestock has escaped the tax rolls.

J. C. Miller, Newton County Tax Assessor & Collector, was called by appellant. He stated that he made lists of automobiles registered in the county each year, that these lists were made each year, beginning after February 15th. He said he did not know how many registrants' motor vehicles were residents of Newton County or what cars were owned by them on the 1st of the years 1956 and 1957. Appellant placed its empoyee, B. G. Nichols, on the stand who testified that he and three or four other assistants, working about 3 weeks, made up, from the motor vehicle registration lists furnished him by the Newton County Tax Assessor-Collector for the years 1956 and 1957, two lists which showed the ownership of cars to the same registrant for two consecutive years, that is, one group showing the same vehicles registered to the same persons for both years, 1955 and 1956, and then a list showing motor vehicles registered to the same persons for the years 1956 and 1957. On cross examination Mr. Nichols stated that he knew very few residents of Newton County and that very few of the persons registering vehicles he knew lived in Newton County, and he did not know where any of the cars were situated on January 1st of either year involved.

R. A. Hunter, Chevrolet-Cadillac dealer at Lufkin, testified that the automobile business used a price book compiled and printed by the National Automobile Dealers Association, that the book used by him was the same book used by dealers in several states of the Southwest and it was

compiled by dealers sending in sales prices of automobiles by make, year and model. He admitted that this book was merely a guide to be used by dealers and not one which showed the true market value of any one motor vehicle. Based, however, on the prices set forth in this book he totaled the value of motor vehicles from the 1955–1956 list compiled by Mr. Nichols to be $950,059 and the list for registration for the years 1956 and 1957 $997,697. He testified on cross examination that he did not know the cash market value of any of these vehicles on January 1st. Based on the above testimony and records, appellant in its brief asserts that if all personal property had been taxed which should have been as shown above, appellant's taxes for each year would have been reduced by approximately $200. While we have some doubt that this amount would be considered excessive or substantially higher so as to give appellant relief in view of the rule in State v. Whittenburg, above, yet we do not base our conclusion on this point. Wendell Forse, President of the District, called as an adverse witness by appellant, testified that there were many stores and businesses in Newton County, but no values were attempted to be placed on them.

The testimony for appellee follows: Sam Collins, an automobile dealer in Newton, stated that the N.A.D.A. book is a sort of guide but that you cannot get the amount set out in this book for cars listed. Causey Mattox, Assessor-Collector for appellee, testified that he had been such since the 1st of January, 1956, that it was necessary to compile and build tax rolls for the district which had just been formed and he made a copy of the County Tax Assessor's assessment of property in the county and used as a basis for his rolls. He sent out notices early in 1956 to all property owners to render their land and personal property, and did likewise for the year 1957. He stated that there were about 1,500 or 1,600 separate renditions of personal property on the District's tax rolls for each year

and that these renditions were generally in a sum total and did not itemize the property. The total personalty on the 1956 tax rolls was $596,759 and for 1957 it was $683,448. Mr. Maddox said that all property of the District was set on the rolls at 33⅓ percent of the market value by the Board of Equalization. He testified further that he worked diligently to try to ferret out and assess all items of personal property that he could fix taxable for both years; that he called on Mr. C. L. Todd with the First National Bank of Newton the first part of each year and demanded that the District be furnished with a list of depositors and the amount of their credit on the 1st of each year. The bank official refused to furnish him this information, stating that under federal regulations they were prohibited from doing so. Howard C. Montgomery, surveyor by profession, testified that he was chairman of the Board of Equalization in 1956, and that they worked on the rolls from the 1st of June through September or October and stated there was a sincere and honest effort to put all properties on the tax rolls. W. H. Talley, Director and Manager of the District, stated that he and others connected with the District did all they could to get all properties in the District on the tax rolls at proper and fair values, that to his knowledge no personal property was left off the tax rolls; and that the District had employed estimators of timber and also employed a firm to help in valuing mineral interests.

We have set out in substance the evidence in detail in view of appellant's contention that the findings of the jury were against the great weight and preponderance of the evidence. We cannot hold that the verdict is against the great weight of the evidence. It may be that there was a considerable amount of personal property which was taxable that escaped taxation, but this is by no means clear from the proof offered; in any event we do not believe from the record that this was any

fault of the tax officials of the District. From the testimony it is our view that they used considerable diligence to have their rolls reflect the true taxable property of the District. Furthermore, there is no finding of the jury nor any testimony in the record which shows any specific item of personal property omitted from the rolls, nor as to its true market value so that a comparison could be made between the taxes assessed against appellant and the taxes which would have been assessed had any such item of personal property beeh on the rolls. At best there is only guess and speculation as to properties that have been omitted from the tax rolls. This is not enough. We think that the holding of the U. S. Court of Appeals, 5th Circuit, in City of Orange, Tex. v. Levingston Shipbuilding Co., 258 F.2d 240, which construes the applicable Texas law in a very clear and forceful manner, is against appellant. To point out the onerous burden of the taxpayer in a case of this kind, we quote from the City of Orange case, at page 245, as follows:

"The thesis of Taxpayer is substantially this: had personal property of an actual value of $35,000,000 note 5, supra, not been omitted, the tax rolls would have been approximately $90,000,000; consequently, for the City to raise the same amount of tax dollars, all taxpayers would have paid 35/90 or 38% less taxes had all personalty been included. So the Master found as to this Taxpayer.

"The theory is a good one, but as the Texas Courts point out, this is not enough. It must finally be translated into hard dollars out of the complaining taxpayer's pocket. This cannot be done here for at least two reasons. First, there was inadequate proof of the actual or taxable value of the omitted properties * * *."

This case involved deposits of banks in Orange, a lump average value on automo-

biles and household furnishings and is very similar to the present one. We believe that the following quotation from that case is applicable to the present one: (at page 247)

"As it now stands, no one person knows how much in dollars or what part in percentage of these three omitted items should be reduced because of these factors affecting their tax assessability. It could be much or little. But it was an inherent part of the burden which the Taxpayer took on but did not carry. The result is that the City's prima facie case remained unrebutted at the close of the trial, and the judgment had to go for it for both years."

Appellant's 4th and 5th points are overruled.

The judgment of the trial court is affirmed.