ACKLEY ET UX. *v.* WICOMICO COUNTY URBAN SERVICES COMMISSION

[No. 66, September Term, 1960 (Adv.).]

*Decided, per curiam, July 1, 1960.*

*Opinion filed July 18, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*John B. Robins,* with whom were *Stanley G. Robins* and
*Robins & Robins* on the brief, for the appellants.

*John E. Jacob, Jr.,* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree declaring that Chapter 282 of
the Acts of 1959, creating the Wicomico County Urban Serv-
ices Commission and delegating to it certain powers and du-
ties, is valid and constitutional. We advanced the case for

argument and passed a *per curiam* order affirming the decree. We shall now state the reasons for our action.

The Act in question, codified as Sections 512-541 of the local code, authorized the County Commissioners of Wicomico County to appoint a Commission to deal with local problems of water, sewerage, drainage, and the like. Although five contentions were made below, the only contentions pressed on appeal are that Section 515 of the Act contains an unconstitutional delegation of legislative power to a group of private citizens, and that it does not contain adequate standards to guide the Commission in the exercise of its authority to create urban service districts. Both questions may be considered together.

It is conceded that the Commission was duly appointed, and received a petition filed with it by more than twenty residents and taxpayers of an area described therein, bounded by the corporate limits of Salisbury on the north, the Wicomico River on the west, Tony Tank Lake on the south, and the line of the Pennsylvania RR. on the east. It gave preliminary approval to the creation of a sewer service district as described, obtained a preliminary engineering survey of the project, and held the first of two required public hearings to advise the residents and property owners in the proposed district of the estimated cost of the system and the estimated annual cost of both front foot assessment and service charges. Suit was filed after the Commission had given preliminary approval of the project and contracted for the preparation of complete engineering plans and specifications. The Commission has not yet spent any sizable sums of money, but if it gives final approval and contracts for construction of the system, it will be necessary to sell a bond issue of about $375,000. The appellants are residents and taxpayers in the area included in the proposed district who will be subject to assessment to support said bond issue.

The pertinent part of the Act as codified reads as follows:

"515. Petition for district; procedure.

(a) Petition.—Whenever twenty (20) property owners residing in any locality in Wicomico County or if there are not twenty (20) property owners in

such locality, then twenty-five per cent (25%) of the owners therein shall petition the Commission to have said locality (the boundaries whereof shall be definitely stated in said petition) constituted as a new district, the Commission, if it approves, shall cause to be made a preliminary engineering survey of the project to determine the feasibility and probable cost of providing such area with the urban service or services requested in said petition. The Commission shall prepare without cost to the petitioners a preliminary estimate to determine the approximate cost of providing such facilities. The Commission will also submit an estimate of the cost of making surveys and preparing a complete engineering and financial report which shall include the estimated assessed property valuation as fixed for County taxation purposes within the locality involved, which estimated assessed valuation shall be furnished to the Commission by the County Commissioners. Whenever such preliminary estimates are completed the Commission shall give notice by publication in one or more newspapers published within the County once a week for three (3) successive weeks and by handbills posted and circulated in the locality where said district is proposed, which notice shall specify the proposed district together with the time and place of the hearing to be held, at which hearing those present shall be given the probable cost of providing such area with the urban service or services requested in said petition as shown by the preliminary survey and the probable cost of the preparation of the complete engineering and financial report incident thereto. If the estimated cost of the proposed facilities, including the cost of the engineering and financial report incident thereto together with the unamortized balance of the cost of all facilities previously installed by the Commission in the area involved shall exceed fifteen per cent (15%) of the assessed property value as fixed for county

taxation purposes in said area or locality or if the project is not feasible from an engineering or financial standpoint, then the Commission may in its discretion deny the petition. If the Commission shall deny the petition, a majority of the land owners in said area or locality may petition the Commission to prepare surveys, plans, engineer's reports and estimates and all costs to be incurred in making said surveys, plans, engineer's reports and estimates, shall be borne by the landowners within the area or locality, which estimated cost shall be certified by the Commission to the County Commissioners who shall, in their next annual levy, include a tax on all land and improvements assessed for county tax purposes within said area or locality, in rate and amount sufficient to pay the Commission for such estimated costs, which tax shall be levied and collected and have the same priority right, bear the same interests and penalties and in every respect be treated as county taxes. The County Treasurer shall credit to the Commission said tax funds as collected.

(b) Surveys.—After the Commission has been credited with the expense to be incurred in the preparation of the surveys, plans, engineer's reports and estimates, then the Commission shall cause to be prepared such surveys, plans, engineer's reports and estimates, and after the completion of the same the Commission shall give notice by publication in one or more newspapers within the County once a week for three (3) successive weeks and by handbills posted and circulated in the area or locality where said proposed district is contemplated, which notice shall specify the proposed area to be served, and the proposed urban service or services to be furnished therein, together with the time and place of a hearing to be held, at which hearing a complete report shall be made as to the probable cost of the facilities contemplated and the establishment of a district. If the probable costs of the proposed facilities in said

new district, together with the unamortized balance of the cost of all facilities previously installed by the Commission in the area involved, is estimated to exceed fifteen per cent (15%) of the assessed property value as fixed for County taxation purposes in said area, or if the project is not feasible from an engineering or financial standpoint or in the judgment of the Commission is not necessary for the health, safety and welfare of the residents in said area or locality, then the Commission may in its discretion by written order deny the petition. Such order shall be published in one or more newspapers in the county and by handbills posted and circulated within the area or locality involved. If ten (10) of the petitioners, as referred to in this section, are dissatisfied with the order of the Commission, they shall have the right to take and enter within ten (10) days after the first publication of said order, as above provided, an appeal to the County Commissioners of Wicomico County who shall review, after due notice of hearing, the Commission's decision. If the County Commissioners shall find that the costs of installing such facilities and establishing a new district, together with the unamortized balance of the cost of all facilities previously installed by the Commission in the area involved, will not exceed fifteen per cent (15%) of the assessed property value as fixed for county taxation purposes within said area or locality, and if they find that the proposed project is feasible from an engineering and financial standpoint, and if, in addition thereto, they shall find that it is necessary to the public health, safety and welfare of the residents therein that said district be established, they may in their discretion reverse the decision of the Commission in which event they may direct the Commission to proceed to establish said district as hereinafter provided. It is further provided that in the event the petitioners are dissatisfied with the decision of said County Commis-

sioners an appeal will lie to the Circuit Court for Wicomico County, Maryland, provided said appeal is taken within thirty (30) days after the final decision has been rendered by the County Commissioners.

(c) Organization.—If the final decision is in favor of establishing a district in said area or locality, then and in that event the area described in the petition shall become a district for the service or services requested in the original petition and the Commission shall cause the plat of such locality to be made under the supervision of its chief engineer, showing the outlines of said district and the location or locations of the proposed improvements, as precisely as possible, one copy of which plat shall be filed in the office of the Commission, one in the office of the County Commissioners and one in a plat book indexed 'Wicomico County Urban Services Commission', in the office where the land records of Wicomico County are kept; and upon the filing of said plat and the approval of said locality by the County Commissioners of said County and the Commission, such district shown on said plat shall be and the same is hereby designated and constituted for the purpose of this sub-title to be a separate district, and shall be given by the Commission a distinctive name and shall be subject to all the provisions of this sub-title, and the filing of said plat shall constitute legal notice to the public of such action of the Commission. For the purpose of providing for the organization and preliminary expenses of any newly constituted district, the County Commissioners shall furnish the Commission with a sum not exceeding Twenty-five Thousand Dollars ($25,000.00), which shall be repaid out of the first bond issue or income of the particular district."

The appellants make the point that nowhere in the chain of events leading to the creation of a sewer district do the remaining property owners in the proposed district have any

voice in the matter of boundaries. It is true that in a proceeding under section 515 the territorial extent of the proposed system is not put to a vote, but there is a provision for public hearing in the matter. This fact distinguishes the case of *State v. Ball,* 296 S. W. 1085 (Texas) relied on by the appellants. All of the matters leading to the final determination to construct the system in the area proposed are properly left to the sound discretion of the Commission, to be exercised upon findings of feasibility from an engineering and financial standpoint, public necessity for the health, safety and welfare of the residents in the area or locality, and after public hearings. As we see it, there is no delegation to private persons. The petition, in form and substance, is only a proposal which the Commission is not obliged to approve. The power to take action is derived from the Statute itself, and other sections authorize it to act *sua sponte*. The cases generally recognize that there is no improper delegation, where the discretion conferred is unfettered, even though the power is invoked or initiated upon petition of interested parties. See *Water District No. 1 of Johnson County v. Robb,* 318 P. 2d 387, 398 (Kan.) (1957); Note, 70 A.L.R. 1062, 1064. Cf. *Leonardo v. Board of County Comm.,* 214 Md. 287, 304.

The appellants strongly rely upon *Md. Co-op. Milk Producers v. Miller,* 170 Md. 81, but we think that case is distinguishable. There a state-wide Act creating a Milk Control Commission to supervise and regulate the milk industry, in any marketing area established, was held invalid, because the exercise of any power of regulation was contingent upon a request by an indefinite portion of producer, consumer, and distributor classes in areas having no geographical description. That is not true in the instant case. Moreover, the cases recognize that although the legislature may not make the adoption or effectiveness of its general laws contingent upon the action of voters or others, it is not so narrowly restricted as to local laws. Compare *Brawner v. Supervisors,* 141 Md. 586, and *Fell v. State,* 42 Md. 71, cited in the *Md. Co-op.* case. These cases dealt with referenda, but the same distinction would seem applicable to initiative actions, al-

though, as we have indicated, a petition for action by interested parties is not a necessary prerequisite for commission action in the case at bar.

We find no merit in the contention that there were no adequate standards to guide the Commission in the instant case. In dealing with matters affecting public health or safety, elaborate or detailed guides are unnecessary. Cf. *Givner v. Commissioner of Health*, 207 Md. 184, 191, *Pressman v. Barnes*, 209 Md. 544, 554, and *McBriety v. Mayor, etc., of Baltimore*, 219 Md. 223, 238. We think the standards set up in. the Act are adequate.

*Decree affirmed, with costs.*