

# THE ATTORNEY GENERAL
## OF TEXAS

**AUSTIN, TEXAS 78711**

WAGGONER CARR
ATTORNEY GENERAL

July 29, 1965

Honorable J. W. Edgar
Commissioner of Education
Texas Education Agency
Austin, Texas

Opinion No. C-474

Re: Validity of the Central
Education Agency's vouchers
issued to colleges and uni-
versities which provided
teacher training under a
State Plan approved by the
Agency and the United States
Government as authorized
in P.L. 88-164, Mental
Health Retardation Facil-
ities and Community Mental
Health Centers Construc-
tion Act.

Dear Mr. Edgar:

We are in receipt of your letter of recent date requesting an opinion on the question hereinafter stated:

Validity of the Central Education Agency's vouchers issued to colleges and universities which provided teacher training under a State Plan approved by the Agency and the United States Government as authorized in P.L. 88-164, Mental Health Retardation Facilities and Community Mental Health Centers Construction Act.

Article 2654-3b, Vernon's Civil Statutes, provides in Section 5 thereof that:

"The State Board of Education shall be responsible for maintaining State programs and activities designed to bring about improvement in the public schools. In discharging this responsibility, the Board is authorized to enter into contracts for grants from both public and private organizations <u>and to expend such funds for the specific purposes and in accordance with the terms of the contract with the contracting agency.</u>" (Emphasis added).

Hon. J. W. Edgar, page 2 (C-474)

House Bill 86, Acts of the 58th Legislature, 1963, the general appropriations bill, provides in Article IV and on pages IV-5 and IV-12 the following provisions:

"The State Board for Vocational Education, through its Executive Officer, the Commissioner of Education, is hereby authorized to receive and disburse in accordance with plans acceptable to the responsible Federal Agency all Federal moneys that are made available to the State of Texas for such purposes and such other activities as come under the authority of the State Board of Vocational Education, and such moneys are appropriated to the specific purpose for which they are granted.

". . .

"The proper officer or officers of the Central Education Agency are hereby authorized to make application for and accept any other gifts, grants or allotments from the United States Government or other sources to be used on cooperative and any other projects or programs in Texas. Any such Federal and other funds as may be deposited in the State Treasury are hereby appropriated to the specific purposes authorized by the Federal Government and other contracting organizations, and the State Board of Education is authorized to expend these funds in accordance with the terms of the contract with the contracting agent. . . ." (Emphasis added).

Section 3 of Article 2654-1 provides in part as follows:

"The Central Education Agency shall be the sole agency of the State of Texas to enter into agreements respecting educational undertakings, . . . with an agency of the Federal Government, except such agreements as may be entered into by the Governing Board of a State university or college. . . ."

Your letter states on page three thereof the following:

"In making arrangements or agreements with the fifteen colleges and universities to provide

-2246-

teacher training and to advance payment for such teacher traineeships, the Texas Education Agency relied on the above cited enactments, being of the opinion that those provisions provided the necessary authority for disbursement of the Federal Funds allotted and deposited in the State Treasury, all in line with a State Plan approved by this Agency and the Government. The colleges and universities in good faith have performed the services and provided the benefits for which they now submit their respective reimbursement vouchers."

You have furnished, together with your letter, a copy of the State Plan which was approved by the Federal Government at the time the money was allotted and given to the State of Texas for the purposes as set out in said Plan or agreement. It is noted that all of these funds are furnished by the Federal Government based upon the State Plan as submitted, which in effect is a contract between the State and the Federal Government to the effect that the money will be expended as set out in the said Plan, a copy of which you have advised us has been filed in the office of the Secretary of State.

It is noted that the Plan provides in part as follows:

". . .

"f.  Payment
    (1) Payment will be made to college or university of trainee's choice for both stipend and support grant.
    (2) Trainee will receive stipend from institution.
    (3) Institution will provide Texas Education Agency with necessary expenditure records for accounting purposes."

In view of the provisions of Section 5 of Article 2654-3b and House Bill 86, we are of the opinion that the Legislature intended for the funds received by the Central Education Agency, from such sources as public or private organizations, to be expended in the manner and for the reason set forth in the contract or agreement entered into between the Central Education Agency and the public or private organizations granting such funds. When such contracts or agreements have provisions allowing the funds to be used for payment to

colleges or universities of trainee's choice for both stipend and support grant, we are of the opinion that the State Board of Education is authorized to issue vouchers to colleges and universities which provided teacher training under the State Plan as approved.

The Office of the State Comptroller has questioned the constitutionality of payments to these State institutions due to the fact that they are of the opinion that the same violates Section 51 of Article III, Constitution of Texas, wherein it provides:

"The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever; . . ."

In speaking of Section 51 of Article III of the Constitution of Texas, the Supreme Court, in the case of State v. City of Austin, 160 Tex. 348, 331 S.W.2d 737 (1960), said in part:

". . . The purpose of this section . . . of the Constitution is to prevent the application of public funds to private purposes. See Byrd v. City of Dallas, 118 Tex. 28, 6 S.W.2d 738." (Emphasis added).

It is well settled in this State that when a law duly enacted is attacked as unconstitutional, it is presumed to be valid and doubts as to its unconstitutionality will always be resolved in favor of constitutionality, and a construction will be given, if reasonable, that will uphold it. Southern Pine Lumber Co. v. Newton County Water Supply District, 325 S.W.2d 724 (Civ.App. 1959, err. ref., n.r.e.).

Thus it appears that your inquiry resolves itself into a question of whether the payment of these funds to enable teachers to obtain professional training in areas of mental retardation, emotional disturbance, speech and hearing impairment, whereby they will be better trained to teach such exceptional children, is logically within the meaning of applying "public funds to a private purpose." We think that it is not.

In Attorney General's Opinion V-1067 (1950), this office said in part:

"In determining whether an expenditure of public moneys constitutes a gift or a grant of public moneys, 'the primary question is whether the funds are used for a "public" or a "private" purpose. The benefits of the State from an expenditure for a "public purpose" is in the nature of consideration and the funds expended are therefore not a gift even though private persons are benefited therefrom.'"

The determination of what constitutes a "public purpose" for which a State may expend moneys has been held to be primarily a legislative function, subject to review by the courts when abused, and the determination of the legislative body of the matter has been held to be not subject to be reversed except in instances where such determination is palpably and manifestly arbitrary and incorrect. State ex rel. McClure v. Hagerman, 155 Ohio St. 320, 98 N.E.2d 835 (1951).

The State plan was adopted and finally approved in September, 1964. The 59th Legislature in Section 36 of Article IV, General Appropriation Bill, re-enacted the appropriation previously made for payments of contracts entered into by the Central Education Agency. This re-enactment indicates legislative review and approval of these contracts. It is the opinion of this office that the payments under the particular contract in question here are for a public purpose and therefore do not violate Section 51 of Article III of the Texas Constitution.

## SUMMARY

Pursuant to Article 2654-3b, Vernon's Civil Statutes, and House Bill 86, 58th Legislature, vouchers issued to colleges and universities which provided teacher training under a State Plan approved by the Central Education Agency and the United States Government, as authorized in P. L. 88-164, are valid and payment of such vouchers by the State Comptroller would not violate Section 51 of Article III of the State Constitution.

Yours very truly,

WAGGONER CARR
Attorney General

By  John H. Banks
    Assistant

JHB:ms:sj

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
J. Arthur Sandlin
Malcolm Quick
Tom Routt

APPROVED FOR THE ATTORNEY GENERAL
BY:  Hawthorne Phillips