

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

March 20, 1975

The Honorable F. H. McDowell
President
East Texas State University
Commerce, Texas 75428

Opinion No. H- 559

Re: Whether persons
incarcerated in a federal
correctional institution in
Texas are Texas residents
for purposes of college
tuition.

Dear President McDowell:

You have requested our opinion regarding whether persons incarcerated in a federal correctional institution in Texas are Texas residents for purposes of college tuition. We will first address ourselves to the status of inmates who were not Texas domiciliaries prior to their incarceration.

Section 54.051 of the Texas Education Code prescribes a tuition rate for resident students of $4 per semester credit hour, but not less than $50 per semester, and for nonresident students a rate of $40 per semester credit hour. An individual above the age of 18 years is classified as a "resident" if he has "resided in" Texas for a 12-month period prior to registration. Sections 54.052(e) and 54.054, Tex. Educ. Code; Attorney General Opinion H-82(1973). "Resided in" is defined by the statute as "domiciled in." Exceptions to this general test for determining residency, discussed below, are detailed in other portions of the statute.

In the United States Supreme Court's recent decision in Vlandis v. Kline, 412 U.S. 441 (1973), the Court struck down a Connecticut statute which in certain instances created an irrebuttable presumption of non-residency. The statute provided that if the legal address of a married student was outside the state at the time of admission, or if the legal

p. 2515

address of a single student was outside the state during the year pre-
ceding admission, such student remained a nonresident for tuition
purposes so long as he remained a student in Connecticut.   The Supreme
Court held that the statute contravened the Due Process Clause of the
fourteenth amendment because it denied a person the opportunity to
present evidence that he is a resident, on the basis of a permanent
irrebuttable presumption which was not necessarily true in fact.

The significance of the Vlandis decision for the present inquiry
is that, while no Texas statute in itself creates an irrebuttable pre-
sumption of nonresidency with regard to prisoners, section 54.052 of
the Education Code, in combination with a number of court decisions,
appears to have that effect.

Since section 54.052 defines "residence" as "domicile," and
since the manner of determining domicile is not specified in any Texas
statute, we must rely on judicial construction.   An early opinion,
Hardy v. DeLeon, 5 Tex. 211 (1849),cited Story's Conflict of Laws for
the proposition that:

> . . . residence in a place, to produce a change in
> domicile, must be voluntary.   If, therefore, it be
> by constraint or involuntary, as by banishment, arrest,
> or imprisonment, the antecedent domicile of the party
> remains.   Id., at 235.

Other cases which have considered various classes of physically
detained or legally disabled persons have adhered to this rule.   The
removal of an insane person to a different county for institutionalization,
for example, is not voluntary and cannot therefore constitute a change
of domicile.   Owens v. Stovall, 64 S. W. 2d 360, 362 (Tex. Civ. App.
--Waco 1933, writ ref'd).   Federal cases have reached the same conclu-
sion, at least for purposes of diversity jurisdiction and venue.   See, e.g.
Ellinburg v. Connett, 457 F. 2d 240 (5th Cir. 1972); Dreyer v. Jalet,
349 F. Supp. 452 (S. D. Tex. 1972), aff'd. 479 F. 2d 1044 (5th Cir. 1973).
In the latter case, the Court stated:

> It appears clear that an otherwise non-citizen of
> a state does not acquire a domicile, and hence
> citizenship, in a state merely because he happens
> to be incarcerated in that state.  Id., at 465.

Although most courts have not expressed the prisoner domicile
rule in such terms, it is apparent that the effect of the rule is to create
an irrebuttable presumption of nonresidency with respect to all persons
whose preincarceration domicile was elsewhere.  The Court of Appeals
for the Sixth Circuit, recognizing the logical and constitutional difficulties
in the operation of such a rule, recently concluded that the question of a
prisoner's domicile required a factual determination that could not be
made by the facile application of an irrebuttable presumption.

In that case, Stifel v. Hopkins, 477 F. 2d 1116 (6th Cir. 1973), the
prisoner's well-publicized murder trial in Ohio had aroused a great
deal of hostility against him there.  He was sentenced to serve his term
at a federal facility in Pennsylvania, and he had declared publicly and
repeatedly that he never intended to return to live in Ohio.  The Court
noted a number of situations in which a person's compelled residence in
a particular jurisdiction does not prevent his becoming domiciled therein.
In each of these situations, the Court observed, the individual was not
precluded from showing that he had developed the intention to be domiciled
at the place to which he had been forced to remove.  The same opportunity
should be afforded the prisoner:

> No good reason appears for applying a contrary
> per se rule to him by making the presumption
> that he has retained his former domicile an irrebuttable
> one.  Id. at. 1124.

In view of the clear trend of Texas and Fifth Circuit cases toward
an irrebuttable presumption rule, we would be obliged to disregard
the rationale of Stifel were it not for the "spectre of unconstitutionality"
raised "by approving the application of an irrebuttable presumption of
fact to a particular class of citizens."  Id., at 1125.  For not only do
the unusual conditions of Stifel, but other circumstances as well, demonstrate

situations in which a presumption of nonresidence might not be true in fact. Federal prisoners, for example, may be permitted some choice of the particular prison facility in which they will be incarcerated. Id., at 1119. Furthermore, "the establishment of an apparently permanent residence in the state of imprisonment by the prisoner's immediate family" would constitute some evidence of his intent to remain there. Id., at 1128 (concurring opinion). Although a prisoner's physical compulsion is an important factor in determining domicile, and although the prisoner has the burden of proving the requisite intent, we cannot conclude that he may never demonstrate this intent as a matter of law.

It is well settled that, where possible, a statute should be construed so as to avoid constitutional conflict. State v. City of Austin, 331 S. W. 2d 737 (Tex. Sup. 1960); Southern Pine Lumber Co. v. Newton County Water Supply District, 325 S. W. 2d 724 (Tex. Civ. App. --Beaumont 1959, writ ref'd, n. r. e.). Since we believe that an irrebuttable presumption of nonresidence would raise the "spectre of unconstitutionality, " we interpret section 54.052, and the various court decisions which have considered the question of a prisoner's domicile, to create a rebuttable presumption that a person retains his preincarceration domicile. The presumption may be overcome only by a sufficient demonstration of the prisoner's intent to remain in Texas after his release.

Exceptions to the domicile test in determining residency for purposes of college tuition are specified in other portions of section 54 of the Education Code. One of these, the exception for "military personnel, " section 54. 058, is necessarily inapplicable to prisoners. Others, such as the exception for "dependents of military personnel" stationed in Texas, section 54.058, the exception for the spouse and children of an employee of an "institution of higher education, " section 54. 059 and the exception for the spouse of a "resident of Texas, classified as such under this chapter at the time of marriage and at the time the nonresident registers, " section 54.056, would seem to be available to few, if any, prisoners.

Under the terms of section 54.052(d), a person "who has come from outside Texas" may be classified as a "resident student" without

regard to  domicile,  provided he has been "gainfully employed in Texas for a 12 month period immediately preceding registration in an educational institution. "  Although the Federal Prison Industries Corporation is required by statute to ". . . provide employment for all physically fit inmates in the United States penal and correctional institutions . . ." 18 U. S. C.  section 4122(b),  it is doubtful that individuals who work in prison can be said to be "gainfully employed. "

In Sapp v.  United States,  227 F. 2d 280, 281 (5th Cir. 1955),  the Court of Appeals held that federal prisoners may not be considered employees of the United States for purposes of the Federal Tort Claims Act.  Prisoners would also seem not to qualify as persons "gainfully employed" under any criteria established by Texas law.  See, e. g. , Gibson v.  Gillette Motor Transport, Inc. ,  138 S. W. 2d 293 (Tex.  Civ. App.  --Eastland 1940,  writ ref'd); Great Southern Life Insurance Co. v.  Johnson,  25 S. W. 2d 1093 (Tex.  Comm.  App. 1930); Rose v.  Clutter, 271 S. W.  890 (Tex.  Comm.  App. 1925).

In addition,  the "gainfully employed" exception was probably written into the statute in order to insure that an individual,  before he became eligible for resident tuition rates,  would contribute to the state economy for a substantial period through sales taxes and purchasing.  We therefore believe that the term "gainfully employed" was not meant to be applied to prisoners.  In summary,  since it is doubtful that he is qualified for one of the special statutory exceptions described above,  a prisoner in Texas who was not a Texas domiciliary prior to incarceration,  may demonstrate the fact of Texas residence for purposes of college tuition only by an affirmative showing that he intends to remain in Texas after his release.

In the case of individuals who were domiciliaries of Texas prior to their imprisonment,  we perceive no problem.  Whether the presumption that a person retains his preincarceration domicile be viewed as rebuttable or irrebuttable,  these persons must be deemed Texas residents for purposes of college tuition.

## SUMMARY

Persons who are incarcerated in a federal correctional institution in Texas and whose pre-incarceration domicile was in Texas are Texas residents for purposes of college tuition. Those persons whose preincarceration domicile was not in Texas may demonstrate Texas residence only by showing that they intend to remain in Texas after their release.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

lg